**R & R ASSOCIATES, INC.,**
**Plaintiff, Appellee,**

v.

**VISUAL SCENE, INC., Defendant,**
**Appellant.**

**No. 83–1495.**

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1983.
Decided Feb. 7, 1984.

John G. Hines, Providence, R.I., with whom Iannuccillo & Hines, Inc., Providence, R.I., was on brief, for appellant.

George M. Prescott, Lincoln, R.I., with whom Oster, Groff & Prescott, Lincoln, R.I., was on brief, for appellee.

Before COFFIN, Circuit Judge, ROSENN,* Senior Circuit Judge, and BREYER, Circuit Judge.

ROSENN, Senior Circuit Judge.

The plaintiff, R & R Associates, Inc. (R & R), instituted a diversity action in the United States District Court for the District of Rhode Island seeking damages for an alleged breach of .contract. The defendant, Visual Scene, Inc., counterclaimed and, af-

* Of the Third Circuit, sitting by designation.

ter discovery, the case was tried to a jury. The jury found for the plaintiff in the sum of $34,000, and rejected the residual of defendant's counterclaim that had not been previously dismissed by the district court. The court entered judgment upon the verdict. The defendant appeals, raising primarily evidentiary questions and the failure of the court to grant defendant's motions for a directed verdict and a new trial. We affirm.

### I.

Defendant Visual Scene, Inc., a Florida corporation with its principal place of business in Florida, imports sunglasses and distributes them to various wholesale markets throughout the United States. Plaintiff R & R Associates, Inc., a Connecticut corporation with its principal place of business in Rhode Island, sells and distributes sunglasses, primarily to independent drugstores. Sometime around the end of 1974, the defendant agreed to supply, and the plaintiff agreed to purchase, all of the plaintiff's requirements for sunglasses solely and exclusively from the defendant.

Until approximately 1979, the relationship between the parties seems to have been quite amiable. As the business of the defendant grew, however, the plaintiff came to represent an increasingly insignificant portion of that business. By 1979, for instance, plaintiff accounted for only $150,000 of defendant's $15,000,000 in annual sales. The defendant's indifference to plaintiff's account mounted as the plaintiff's proportion of the defendant's revenues declined.

Defective merchandise had always been a fact of life between the parties in their dealings with over-the-counter sunglasses. Until 1979, however, the issue caused little if any friction between the parties. When problems arose, plaintiff would ordinarily take back the merchandise that had been found defective by *its* customers and return the sunglasses to defendant for credit. Sometime in 1979, however, defendant seems to have changed its attitude, refusing to accept the return for credit of a good deal of merchandise plaintiff claimed to be defective.

In August 1980, therefore, plaintiff brought suit against the defendant alleging that defendant had breached its agreement with plaintiff by supplying defective and obsolete merchandise and by shipping merchandise plaintiff had not ordered. The complaint further alleged that the defendant failed to provide prompt shipment, thus creating excessive back orders, and had refused to allow plaintiff to return defective and obsolete merchandise for credit. The defendant counterclaimed for breach of contract, unfair competition, interference with a contractual relationship, palming off, and for monies due on a book account.

At the close of plaintiff's case, defendant moved for a directed verdict. The court denied the motion, and defendant never renewed it. At the close of the defendant's case, plaintiff moved for a directed verdict on each of the entire range of counterclaims. The court granted each motion except one, the book account claim. The court then submitted the case to the jury.

### II.

#### A.

Defendant first contends that the court improperly admitted into evidence plaintiff's exhibit No. 1, a summary of the allegedly defective merchandise plaintiff procured from defendant. We do not agree.

Fed.R.Evid. 1006 provides:

**Summaries**

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Defendant does not deny that, prior to trial, it had ample opportunity to examine the

numerous boxes of records summarized. Nor does it deny that it failed to ask the court to "order that they be produced in court." Accordingly, we believe that Rule 1006 authorizes the district court to do precisely what it did: admit into evidence a summary of voluminous records as "the only practicable means of making their contents available to judge and jury." Fed.R. Evid. 1006 advisory committee note. See 5 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 1006 (1983); *Nichols v. Upjohn Co.*, 610 F.2d 293, 294 (5th Cir.1980); *Braunstein v. Massachusetts Bank & Trust Co.*, 443 F.2d 1281, 1284 (1st Cir.1971) (a pre-federal rule of evidence case).

### B.

The defendant also contends that the court erred in admitting into evidence testimony of Thomas C. Smith, President of R & R, regarding the cost to plaintiff of procuring the allegedly defective sunglasses from defendant. To support this contention defendant cites Fed.R.Evid. 1002, the "best evidence" requirement.

■ Rule 1002 provides:

**Requirement of Original**

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.

One need not read further than the opening clause of the Rule to detect the flaw in defendant's argument. For when President Smith testified that it cost plaintiff $31,-850.19 to procure the allegedly defective merchandise, he was in no way attempting "to prove the contents of a writing." Rather, he was attempting by his own direct testimony to prove a particular fact: what it cost R & R to procure the merchandise. To be sure, plaintiff had in its possession written documentation that presumably supported President Smith's testimony.[1] But, as the advisory committee note makes clear, Rule 1002 applies not when a piece of evidence sought to be introduced has been somewhere recorded in writing but when it is that written record itself that the party seeks to prove. The rule "requiring the production of the original document applies only when the proponent is attempting to prove the contents or terms of a writing." G. Lilly, An Introduction to the Law of Evidence § 116 (1978). See 5 Weinstein's Evidence, *supra*, ¶ 1002; *United States v. Ratliff*, 623 F.2d 1293, 1296 (8th Cir.1980).

■ In sum, defendant had ample opportunity to undercut the testimony through a rigorous cross-examination of President Smith and the jury was free to reject the testimony. No evidentiary rule, however, prohibits a witness from testifying to a fact simply because the fact can be supported by written documentation.

### C.

■ At the close of plaintiff's case, defendant moved for a directed verdict pursuant to Fed.R.Civ.P. 50(a). The court denied the motion. Defendant now contends that the court erred in so doing. Whatever the merits of the contention—and frankly we have a difficult time discerning any—the issue has not been preserved for appeal, for defendant failed to renew the motion at the close of all the evidence. *Gillentine v. McKeand*, 426 F.2d 717, 722–23 (1st Cir. 1970); *Home Insurance Co. of New York v. Davila*, 212 F.2d 731, 733 (1st Cir.1954). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure § 2534 (1971).

We have reviewed defendant's other contentions[2] and find them to be without merit. The judgment of the district court is affirmed.

---

**1.** In fact, subsequent to President Smith's direct examination, plaintiff unsuccessfully sought to introduce the documentation into evidence.

**2.** These include claims that the district court erred in 1) not granting Visual Scene's motion for a new trial; 2) granting R & R's motion for directed verdict with regard to Visual Scene's breach of contract counterclaim; and 3) rejecting Visual Scene's offer of proof concerning damages on the breach of contract claim.