Magda L. MARIN–PIAZZA, et al.,
Plaintiffs, Appellees,

v.

Awilda APONTE–ROQUE,
Defendant, Appellant.

No. 87–1592.

United States Court of Appeals,
First Circuit.

Heard Oct. 31, 1988.

April 26, 1989.

Vannessa Ramirez, Asst. Sol. Gen., Hato Rey, P.R., Dept. of Justice, with whom Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief for defendant, appellant.

Frank Rodriguez Garcia with whom Felix A. Colon Miro, Ponce, P.R., was on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

The Secretary of Education of Puerto Rico and several other school officials have attempted to appeal judgments below granting reinstatement, back pay, compensatory damages, punitive damages, and doubled compensatory damages under state law to plaintiffs, two teacher's aides, as proper recompense for the termination of their employment because of their political affiliation. After oral argument, plaintiffs' counsel called to our attention the failure, under Fed.R.App.P. 3(c), of defense counsel to list each codefendant separately in the Notice of Appeal. Consequently, under *Torres v. Oakland Scavenger Co.,* — U.S. ——, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), and *Santos–Martinez v. Soto–*

*Santiago,* 863 F.2d 174 (1st Cir.1988), we hold that only Secretary Aponte Roque ("the defendant"), whose name appears in the notice of appeal, is properly before this court. We limit our consideration accordingly.[1]

Our review persuades us to affirm the jury's finding of liability as to the defendant, and the awards of reinstatement, back pay, and compensatory damages. We set aside, however, punitive damages and double compensatory damages under state law claims.

### Facts

The following are the relevant facts and inferences therefrom favorable to the plaintiffs as the jury could properly have found.

Plaintiffs Marin–Piazza and Rivera–Rivera were employed in the Washington Irving School, Adjuntas School District, Ponce Region, as special education teacher's aides[2] from August 1, 1983, until June 28, 1985. Although their contract was for an annual fixed term, beginning on August 1 and expiring at the end of the following June, plaintiffs were assured by their superintendent that, if their performance was satisfactory, they could expect to be reappointed. At the end of their first year they were indeed reappointed for a second year, without having filled out application forms. Plaintiffs' academic credentials consisted of a high school diploma and no more than nine university credits. At this time, anyone with a high school diploma and a 2.00 grade point average met the minimal requirements of a teacher's aide. Both were affiliated with the New Progressive Party (NPP).

With the coming to power of the Popular Democratic Party (PDP) after the 1984 elections, defendant Aponte Roque was appointed Secretary of Education. Under date of July 10, 1985, she issued Circular Letter 2–85–86 establishing new eligibility standards for the position of teacher's aide and a new procedure for processing applicants. Applicants were required to have at least 60 college credits with at least a 2.00 grade point average or two years' satisfactory experience. Instead of the prior practice of leaving the selection of candidates to the superintendent of each district, future selections would be made by the unanimous decision of a committee composed of the school superintendent, the principal of the school, and a representative of the regional director; should a unanimous decision not be forthcoming, the regional director would decide.

Plaintiffs were interviewed by a committee composed of the superintendent of the district, defendant Pagán; the zone health supervisor, defendant Santiago, who had assertedly been named by all school principals in the district to serve as their surrogate on selection committees; and the regional supervisor, defendant Ortiz, who was named as the representative of the regional director, defendant Laó. Although plaintiffs met the threshold of two years of satisfactory experience, the committee understood that the college credit requirement was to be weighted more heavily.

The results of the selection process were that of the 15 appointments, only 1 of the 11 NPP aides was reappointed, while all 4 of the PDP aides were reappointed. On the other hand, 6 aides who were not PDP members received appointments, while 9 PDP aides were appointed. All successful

---

**1.** I note my disagreement with my brothers on this issue. The Notice of Appeal indicated that "the codefendants in this action hereby appeal." This refers to a precise group of five persons. In my view, this is sufficient to meet the holding in *Torres* requiring *"some designation* that gives fair notice of the specific individuals seeking to appeal." 108 S.Ct. at 2409 (emphasis added). Unlike *Martinez,* there is no inconsistency in the record or briefs of the present appeal to cast doubt on the precise identity of the putative appellants. Because the codefendants do not depend on the phrase "et al." in the notice, I do not find *Gonzalez–Vega v. Hernandez–Colon,* 866 F.2d 519 (1st Cir.1989), controlling.

**2.** A special education teacher's aide's duties were generally to work with a regular teacher in preparing lesson plans, assist groups of students in carrying out assigned tasks, visit students' homes, help the regular teacher in outdoor activities, in directing games and songs, in attending children in the bathroom and in the lunchroom.

applicants had met the 60 college credits requirement.

### Discussion

Plaintiffs brought suit for the wrongful termination of their employment under 42 U.S.C. § 1983, alleging violation of both their first amendment and due process rights, and asked the court to take pendent jurisdiction over their claim for double damages under 29 L.P.R.A. §§ 136 (Law No. 382 of 1950) and 146 (Law No. 100 of 1959).

The jury awarded identical damages to each plaintiff: $10,900 in back pay; $5,000 in "other compensatory damages," and $15,000 in punitive damages. The district court denied defendants' entitlement to qualified immunity,[3] granted reinstatement, and awarded "double damages" under 29 L.P.R.A. §§ 136 and 146 amounting to $15,900. 668 F.Supp. 63. Each plaintiff, therefore, was to recover $46,800 from defendants, who were held jointly and severally liable.

Plaintiffs' major claim is (1) that although they were transitory employees under annual contracts with the Department of Education, both custom and assurances of retention gave them a reasonable expectancy in remaining in their positions; and (2) that they were dismissed from the positions, because of their NPP political affiliation, by the combined effects of, first, the defendant Secretary's action holding up reappointments and compelling plaintiffs to apply under her new criteria and, second, a partisan decision on their retention by a committee composed entirely of members of the PDP. These allegations amount to a claim of right to retain public employment, protected against political discrimination. *Cheveras Pacheco v. Rivera González*, 809 F.2d 125, 128 (1st Cir.1987).

■ The defendant challenges the sufficiency of evidence to support the jury's finding that political discrimination was the motivating reason for the nonrenewal of plaintiffs' contracts. The evidence connecting the defendant to plaintiffs' ultimate termination was not compelling. We might well have decided, if we had been the factfinder, that she, as she testified, had genuinely wished to raise the caliber of teacher's aides by laying more stress on college credits. The fact that all aides appointed did possess at least 60 hours of such credits was an indication that the new policy was not a pretext. And we are inclined to give a certain amount of leeway to personnel decisions of new administration officials which implement a facially politically neutral reorganization of structure or procedure.

We nevertheless hold that the evidence in this record was sufficient to support the verdict as to the Secretary. The jury could reasonably have thought along these lines. First, the Secretary may have concluded that a large number of teacher's aides were appointed during the years of NPP domination and that few of them would have accumulated 60 college credits. Second, she may have thought that, by forcing an open competition between present aides and new applicants, enough PDP applicants with 60 college credits would apply to provide a much "richer" pool to choose from. The fact that there were 64 applicants for 15 aide positions is supportive of this assumption. And, most critically, to ensure that a PDP "tilt" was guaranteed, she may have inserted the requirement of either a unanimous committee vote on an applicant or, failing unanimity, decision by one of her own regional directors, all such directors being PDP members. Under this reasoning, the jury could have felt that an increase in the percentage of PDP teacher's aides from 26 percent to 60 percent was evidence of the tilt. Similarly, it could have concluded that the fact that all of the new aides had the requisite college credits did not negate discrimination. We cannot say, on this particular record, that the finding as to the Secretary's liability was insuf-

---

**3.** Defendant does not challenge on appeal the district court's denial of qualified immunity, so we do not reach this issue. *See, e.g., Gierbolini–*

*Colón v. Aponte–Roque,* 848 F.2d 331, 333 n. 3 (1st Cir.1988).

ficient.[4]

The defendant also challenges the award of $5,000 as "other compensatory damages" (in addition to back pay), and the award of $15,000 in punitive damages as excessive. While the "other compensatory" testimony involved reactions of an emotional and subjective nature, we cannot say that our conscience is shocked. This award may stand.

■ The issue raised by the challenge to the jury's awards of $15,000 as punitive damages is troubling. Under our holding in a 1977 case, *Alicia Rosado v. Garcia Santiago*, 562 F.2d 114, 121 (1st Cir.), punitive damages could not be justified in the absence of "aggravating circumstances." Such are not evident in the record of this case. But, as we recognized in *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 205 (1st Cir.1987), the Supreme Court clarified the threshold standard for the imposition of punitive damages as embracing not only "evil motive or intent" but also "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). In *Smith*, the Court held that a prison guard did not have to act with malicious intent to harm an inmate in order to be liable for punitive damages, where his failure to take minimal precautions could reasonably be considered "reckless indifference." Thus, while the guard may not have *intended* to deny the plaintiff in *Smith* his constitutional rights, he could nevertheless receive a punitive fine for his callous disregard for a prisoner's well-established right to at least a minimally safe environment.

■ The record below fails to reveal sufficient evidence of evil motive as to defendant Aponte Roque. She was far removed from the particular events surrounding the local boards' failure to rehire the plaintiffs.

Nor can we yet say, despite substantial litigation in the area of political discharges over the past several years, that at the time she instituted the new policy regarding teachers aides, the potential civil rights ramifications were so evident that the Secretary's failure to institute a procedure more protective of the federal rights of incumbents could reasonably be deemed "outrageous." Where the legal status of a program with substantial legitimate policy objectives is as sufficiently cloudy as that presented here, punitive damages are not permissible absent evidence that the defendant actually intended to bring about the discharge of current employees in violation of their First Amendment rights. *See Hernandez–Tirado v. Artau*, 874 F.2d 866, 868–71 (1st Cir.1989); *Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 291 (7th Cir. 1985) ("[T]he discharge of public employees on political grounds is not yet regarded in the light of something contrary to natural law; nor is it widely known in nonlegal circles to be a … tort."). *See generally* S. Nahmod, *Civil Rights and Civil Liberties Litigation* § 4.08, § 4.12 (2d ed. 1986). This is true even though a jury could reasonably have found political animus sufficient to hold Aponte Roque liable for compensatory damages, and even though plaintiff's rights were sufficiently well established to defeat defendant's claim of qualified immunity. These findings merely establish what amounts to negligent behavior, and do not rise to the level necessary to support punitive damages. *See Hernandez–Tirado, supra; Soderbeck* at 288–90.

An issue of more complexity is whether or not the district court's doubling of the compensatory damages under Puerto Rico law was within its power.[5] There are two relevant statutes. The earlier one, passed

---

**4.** Our resolution of the liability of the defendant under plaintiffs' first amendment claim makes it unnecessary to address the due process claim, based on the absence of pre-termination notice and hearing.

**5.** Appellant argues that the district court abused its discretion in exercising pendent jurisdiction

over plaintiffs' state law claims. We have ruled that claims under 29 P.R.L.A. § 146 are properly joined to federal age discrimination claims against a private employer. *Wildman v. Lerner Stores Crop.*, 771 F.2d. 605 (1st Cir.1985). We see no principled basis to adopt a separate rule in § 1983 actions.

in 1950, is 29 L.P.R.A. § 136 (Law No. 382). In relevant part it reads:

> Any employer who dismisses, suspends, refuses to reinstate in his job, demotes, reduces the pay, or increases the working hours of, or imposes or attempts to impose heavier working conditions on, any employee or ex-employee; or who in any way discriminates against him, or threatens to commit any such act, on the grounds of his affiliation with a particular political party, shall be civilly liable for a sum equal to double the amount of the damages he may have caused the said employee or ex-employee through such action.

The later, first enacted in 1959, is 29 L.P.R.A. § 146 (Law No. 100). In relevant part it reads:

> Any employer who discharges, lays off or discriminates against an employee regarding his salary, wage, pay or remuneration, terms, rank conditions, or privileges of his work, or who fails or refuses to hire or rehire a person, or who limits or classifies his employees in any manner which tends to deprive a person of employment opportunities, or to affect his status as employee, on the basis of age, as defined hereinafter, race, color, sex, social or national origin or social position, political or religious beliefs of the employee or applicant for employment;
>
> (a) shall incur civil liability
>
> (1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action....

The fact that § 136 uses the words "affiliation with a particular political party" and that § 146 refers to "political ... beliefs" is without significance, for we are informed by a historical note that a 1983 amendment, deleting "affiliation" from the phrase "political affiliation or religious beliefs," involved only "minor word changes." 29 L.P.R.A. § 146, p. 112 (1985 ed.).

■ Parsing these two statutes carefully, we cannot see any indication that § 136 was intended to cover political discrimination suits against the government of Puerto Rico. The definition of "employer" in sections 139 and 142 is general (any "natural or artificial person employing [ ] workmen"). Only when § 146 was enacted does a definition involving government appear. Section 151 provides, for the first time, that "employer" "shall include all such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private business or enterprises." We have been offered no argument, nor can we conceive of one, that the Department of Education qualifies as an agency operating as a private business. That being the case, double damages under § 146 against the defendant in her official capacity is clearly inappropriate.

Whether the defendant is liable under § 136 in her official capacities for double damages is a closer question. We cannot reconcile these two statutes in any other way than by concluding that § 136 does not cover any government employer, while § 146 does cover a specified class of government employers, those operating like private businesses. If, to the contrary, § 136 were read to cover the Commonwealth in general as an employer, the observation of the Supreme Court in *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961), would be peculiarly appropriate: "To borrow the homely metaphor of Judge Aldrich in the First Circuit, 'If there is a big hole in the fence for the big cat, need there be a small hole for the small one?' "

Whether or not, however, we are wrong in our reading of these statutes, Puerto Rico has not clearly waived its eleventh amendment immunity from suit in the federal district court, and therefore damages under 29 L.P.R.A. § 136 are not available against defendants in their official capacities. As the Supreme Court has held in *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974), a state can be deemed to waive its immunity "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " (*quoting Murray v. Wilson Distilling Co.,*

213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)).

More recently, the Court has spoken with equal emphasis:

> The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. As we explained just last Term, "a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify that State's intention to subject itself to suit in *federal court.*

*Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed. 2d 171 (1985) (citations omitted) (emphasis in original). *See also Della Grotta v. Rhode Island,* 781 F.2d 343, 346 (1st Cir. 1986).

In this highly charged, bountiful, and volatile field of litigation involving politically motivated personnel decisions, we would have to have a very clear indication that Puerto Rico wished to subject itself (assuming for the moment that the Commonwealth is an "employer" under 29 L.P.R.A. § 136) to pendent claims for doubling of compensatory damages in federal court before accepting the responsibility. The double damages award against the defendant in her official capacity must therefore be set aside.[6]

While the defendant is not immune under the eleventh amendment from liability in her personal capacity, *see, e.g., Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the statute does not appear to hold her liable in this capacity. The defendant was not plaintiffs' "employer" as an individual. Rather, the defen-

dant can only be considered an employer under § 136 in her capacity as "head, official, manager, officer, managing partner, administrator, supervisor, foreman, overseer, agent or representative" of the Commonwealth or its Department of Education. 29 L.P.R.A. § 139. Thus double damages under § 136 against defendant in her official capacity are barred by the eleventh amendment, and such damages are not available under the statute against defendant in her personal capacity because as such she was not plaintiffs' "employer."

### Conclusion

The judgment of liability against defendant is affirmed. The order of reinstatement and back pay and the jury awards of "other compensatory damages" are affirmed; the court's award of punitive damages and double damages under Puerto Rico law is reversed and set aside.

No costs.

---

6. Appellees advance no argument that defendant is not a state official, but rather a local or municipal officer not covered by eleventh amendment immunity. We therefore assume without deciding that the Department of Education is properly considered the alter ego of the Commonwealth of Puerto Rico for purposes of eleventh amendment analysis.