Waddie JUSINO, et al.,
Plaintiffs, Appellees,

v.

Carmen Sonia ZAYAS, etc., et al.,
Defendants, Appellants.

Nos. 87–1850, 88–2198.

United States Court of Appeals,
First Circuit.

Heard March 1, 1989.

Decided June 1, 1989.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

SELYA, Circuit Judge.

We today confront a procedural motley, consisting of a miswritten docket, a timeous motion thought late, a further motion (of uncertain provenance), a wrongly-captioned appeal, a long-delayed reconsideration and reversal of position by the district court (eventuating at a time when its jurisdiction, arguably, was in abeyance), a second appeal, and a compendium of interwoven details (including the remnants of a waived motion for directed verdict). Underneath the case lie, however, more comforting threads—principles of equity and common sense. Their presence allows us to shape the dizzying patchwork of these appeals into a set of serviceable vestments.

I

Defendants-appellants Carmen Sonia Zayas, Wilfredo Vega Garcia, Martin A. Giron, and Luis Pastrana, high-ranking officials of Puerto Rico's Department of Social Services (DSS), were sued in federal district court by some twenty-three DSS employees. The suit was yet another battle in the drawn-out war which developed in the aftermath of the November 1984 gubernatorial election in Puerto Rico. *See, e.g., Goyco de Maldonado v. Rivera,* 849 F.2d 683 (1st Cir.1988); *Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988); *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255 (1st Cir.1987); *Jimenez Fuentes v. Torres Gatzambide,* 807 F.2d 236 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The plaintiffs claimed that they were discharged without due process and in derogation of their first amendment rights; they also asserted pendent claims under Puerto Rico's employment discrimination laws. Following a seven day trial, the jury found liability and awarded plaintiffs compensatory damages equal to their lost wages. The district

Reina Colon de Rodriguez, Asst. Sol. Gen., with whom Rafael Ortiz Carrion, Sol. Gen., and Norma Cotti Cruz, Deputy Sol. Gen., were on brief for defendants, appellants.

Frank Rodriguez Garcia with whom Francisco J. Rodriguez Juarbe, was on brief for plaintiffs, appellees.

* Of the District of Massachusetts, sitting by designation.

court then considered the matter of supplemental relief and issued an order providing for reinstatement, double damages under local law, attorneys' fees under 42 U.S.C. § 1988, and costs.

Then and thereafter, a series of ragged accouterments appeared, marring the dress of the case. And, because the cloth from which these accessories were gathered was multiple steps in the sewing, we set forth a detailed chronology as to what occurred from that point forward.

1. **June 1, 1987.** The district court signed a judgment which (1) embodied the jury's awards of lost wages and the court's doubling of those awards, (2) ordered plaintiffs reinstated to their government posts, and (3) authorized the filing of a section 1988 fee application.

2. **June 5, 1987.** The clerk entered the judgment on the docket as required by Fed.R.Civ.P. 58. But, he misinscribed the docket sheet and indicated there that entry of the judgment had taken place on June 2, 1987. This slip of the pen, as we shall see, was not without further consequence.

3. **June 19, 1987.** Defendants moved under Fed.R.Civ.P. 59(e) to alter or amend the judgment, contending that the district court erred in doubling damages. Such a motion must be filed within "10 days after entry of the judgment." *Id.* The 10 days include only working days and do not include the day judgment is entered. Fed.R.Civ.P. 6(a). Applying these criteria, the motion was timely vis-a-vis the judgment entered on June 5, 1987 but would have been late had the judgment in fact been entered three days earlier.

4. **July 17, 1987.** Deceived by the misinscribed docket sheet, and believing that the judgment had been entered on June 2, the district court denied defendants' Rule 59(e) motion as untimely. The court, certain that a stitch not in time saved nothing,

abjured consideration of the motion's substance.

5. **August 6, 1987.** Defendants filed a motion asking reconsideration of the July 17 order. This pleading called to the district court's attention that the judgment had been entered on June 5 not June 2, thus rendering defendants' Rule 59(e) motion timeous.

6. **August 17, 1987.** Having heard nothing further from the district court, defendants filed a prophylactic notice of appeal (the "first notice"). As matters turned out, the first notice was less protective than defective: apart from Zayas, the remaining defendants were not named or otherwise specifically identified as appellants. As to all except the lead appellant, therefore, the first notice ran afoul of the specificity requirement of Fed.R.App.P. 3(c). *See Torres v. Oakland Scavenger Co.,* — U.S. —, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988) (a court of appeals lacks power to entertain an appeal from a party not named or specified in the notice of appeal); *Kaiser v. Armstrong World Indus., Inc.,* 872 F.2d 512, 513–514 (1st Cir.1989) (same); *Gonzalez Vega v. Hernandez Colon,* 866 F.2d 519, 519 (1st Cir. 1989) (same); *Santos Martinez v. Soto Santiago,* 863 F.2d 174, 175 (1st Cir.1988) (same).

7. **October 7, 1988.**[1] The district court granted plaintiffs' section 1988 application and ordered defendants to pay attorneys' fees in the amount of $45,085.50. At the same time, the court granted defendants' long-dormant motion for reconsideration (*see supra* No. 5); confirmed that the docket entry was mistaken and that the judgment had not been entered until June 5, 1987; and therefore declared the Rule 59(e) motion to have been filed within the prescribed period. That constituted an outright reversal of the district court's previ-

---

**1.** During the interval between the summer of 1987 and the fall of 1988, nothing of moment happened in district court. On the appellate level, there was much spinning of wheels involving the first notice of appeal, including the issuance of a show-cause order by the clerk of this court; the filing of an informative motion by plaintiffs explaining the slip of the pen, *see*

*supra* No. 2, and consequently, why their Rule 59(e) motion and ultimately their appeal, had been timely; the withdrawal of the rule to show cause; and the issuance of numerous extensions (mostly due to transcription delays). We deem those matters supererogatory for the purposes at hand, and thus do not include them in our chronology of significant events.

ous ruling (*see supra* No. 4). Defendants' triumph was short-lived: the district court now considered the content of the Rule 59(e) motion for the first time and found it jejune. The court again ruled that the disputed Puerto Rico statutes were applicable and reaffirmed plaintiffs' entitlement to double damages.

8. **October 11, 1988.** The October 7 order and the supplementary judgment implementing it were entered on the docket pursuant to Fed.R.Civ.P. 58.

9. **November 9, 1988.** Defendants filed a new notice of appeal (the "second notice"), purporting to appeal from both the earlier and later judgments. This time, the notice of appeal was smartly stitched. It identified all four appellants in a manner which passed *Torres* muster.

## II

■ The parties wrangle at length about the size and shape of the two notices of appeal, and consequently, their force and effect. From our coign of vantage, that bickering constitutes considerable ado about very little. We explain briefly.

In a civil case not involving the federal sovereign, a party aggrieved has 30 days from "the date of entry of the judgment or order appealed from ..." within which to file a notice of appeal. Fed.R.App.P. 4(a)(1); *see also* Fed.R.App.P. 26(a) (computation of time). A timely Rule 59 motion tolls the appeal period; the meter is turned back to zero and starts anew upon disposition of the motion. Fed.R.App.P. 4(a)(4).[2] Initially, the district court decided that defendants' Rule 59(e) motion was out of time. *See supra* No. 4. If the court was correct as to timeliness, then the first notice of appeal (filed on August 17, 1987, *see supra* No. 6) was impuissant to contest the judgment (entered on June 5, 1987, *see supra* No. 2) because, without the benefit of the tolling supplied by a timely Rule 59 motion, the first notice was filed too late (well over 30 days after entry of the judgment). At that point, the notice was effectual only to test the court's denial of the Rule 59(e) motion. *See Rodriguez–Antuna v. Chase Manhattan Bank Corp.,* 871 F.2d 1, 2 (1st Cir.1989); *cf. Ojeda–Toro v. Rivera–Mendez,* 853 F.2d 25, 28–29 (1st Cir.1988) (Rule 60(b) motion).

But, the district court was not correct in assessing timeliness. As the court later recognized and candidly conceded, its ruling had been based on a record-keeping error for which the clerk, not the appellants, was responsible. Contrary to the judge's July 17, 1987 finding, the Rule 59 motion was timely filed. Therefore, it sufficed to toll the appeal period vis-a-vis the original judgment. *See* Fed.R.App.P. 4(a)(4).

■ Equally as important, the appellants did not simply try to appeal; they also moved for reconsideration of the erroneous order, directing the district court's attention to the record-keeping error.[3]

**2.** The rule provides in relevant part:

(4) If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (iii) under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order ... granting or denying ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.

Fed.R.App.P. 4(a)(4).

**3.** We view the motion for reconsideration as brought under neither Rule 59(e) nor Rule 60(b). The motion did not seek to alter, amend, set aside, or even reconsider the June 5 judgment; it merely asked that the court rethink, and correct, its order of July 17, jettisoning defendants' Rule 59(e) motion as brought too late. Not every motion must fit within some neat pigeonhole. *See generally HMG Property Investors, Inc. v. Parque Indus. Rio Canas, Inc.,* 847 F.2d 908, 916 (1st Cir.1988) ("judiciary must be free, within reason, to exercise ... inherent power in flexible and pragmatic ways"); *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.,* 771 F.2d 5, 11 (1st Cir.1985) (Civil Rules "do not completely describe and limit the power of district courts"), *cert. denied,* 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986). The inherent power of a court to correct, within a reasonable time, a manifest error in its own interlocutory order was not completely displaced by the adoption of the Civil Rules. *See United States v. Jerry,* 487 F.2d 600, 604–05 (3d Cir.1973); *Bucy v. Nevada Constr. Co.,* 125 F.2d 213, 217 (9th Cir.1942).

That motion was filed before the first appeal was taken; hence, the district court had jurisdiction over it. To be sure, the district court waited over a year to act—and when it did, the case was on appeal. Technically, the district court lacked jurisdiction at that time and, before granting reconsideration, should have issued a brief memorandum asking us to remand. *Cf., e.g., Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 601 F.2d 39, 42 (1st Cir. 1979) (district judge may request remand if, during pendency of appeal, judge is inclined to allow Rule 60(b) motion for relief from judgment); Fed.R.Civ.P. 60(a) ("leave of appellate court" required for district judge to correct clerical mistake in district court record during pendency of appeal); *Crumpacker v. Crumpacker*, 516 F.Supp. 292, 296–97 (N.D.Ind.1981) (discussing Rule 60(a)). The request-for-remand procedure is not only formally correct, but salutary; we caution the district courts to utilize it whenever an appeal from the judgment is pending and the trial court's jurisdiction thereby cast in doubt. Be that as it may, in this instance any error was harmless; given the circumstances, we would certainly have remanded.

There comes a time when courts must be practical. *See, e.g., Equitable Life Assurance Society v. Porter–Englehart*, 867 F.2d 79, 84 n. 2 (1st Cir.1989) (declining to require parties to undergo "an elaborate game of ring-around-the-rosy" simply to wind up where they began). So here. It would be purposeless for us to insist upon ritualistic compliance with the request-for-remand protocol at this juncture. Were we to ignore what happened in the fall of 1988, we would have to honor the first appeal as to Zayas, and reverse. Because of the patent error resulting from the clerk's slip of the pen, we could not have allowed the original (mistaken) rejection of the Rule 59 motion to stand. As to the remaining defendants, we would be compelled, in equity, to remit the case to the district court with instructions to decide their "unresolved" reconsideration motion. The court would

presumably have ruled on that motion precisely as it did on October 7, 1988 (*see supra* No. 7); the second notice of appeal would have followed; and we would be back to where we are today. In this idiocratic posture, it would be idle to force the parties round and round the mulberry bush for no better reason than ceremonial punctiliousness. *Cf. Gibbs v. Buck*, 307 U.S. 66, 78, 59 S.Ct. 725, 732, 83 L.Ed. 1111 (1939) ("useless" to reverse and remand where, after appeal was filed, district court corrected its own error); *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 895 (1st Cir.1988) (similar). We will not exalt pettifoggery to such an extent; thus, we treat the district court's order granting reconsideration as effective.

Although not expressly so stated, when the district court granted reconsideration, it impliedly vacated the July 17, 1987 order. That action, in turn, resuscitated appellants' original (timely) Rule 59(e) motion. The court then proceeded for the first time to reach the motion on the merits, and found it unpersuasive. The judge's order to that effect was an order denying a seasonable motion "under Rule 59 to alter or amend the judgment," Fed.R.App.P. 4(a)(4), thus triggering a new 30–day period from the date of "the entry of the order disposing of the motion" within which all parties could appeal from the underlying judgment. *Id.* The entry date of the dispositive order was October 11, 1988. *See supra* No. 8. And, when the second appeal was filed on November 9, it was timely, and sufficed to bring the entire judgment to our attention.

Accordingly, we regard the tatterdemalion first notice of appeal as a nullity and resist the invitation to examine its evident flaws. Because all appellants have properly joined in the second appeal,[4] we proceed to the assignments of error.

### III

Having knit up the ravelled procedural sleave, we find the substantive issues

---

**4.** Appellees try to persuade us that the second notice of appeal, even if timely, possessed other defects. We disagree, and see no need for any

extended discussion. Fairly assessed, appellees' initiative amounts to little more than the attempted circumcision of fleas.

which appellants raise to be cut from much more common cloth. We consider them *seriatim*.

### A. *Evidentiary Sufficiency.*

■ Defendants tell us that the most obvious tear in justice's fabric is the manifest insufficiency of the trial evidence to sustain the liability finding. But, appellants make the argument at the wrong time, to the wrong court. Accordingly, they are undone.

First, we note that appellants did not move for a directed verdict at the close of all the evidence. The omission cannot be taken lightly: Fed.R.Civ.P. 50 makes a timely directed verdict motion a prerequisite for later consideration of the legal sufficiency of the evidence.[5] In *LaForest v. Autoridad de las Fuentes Fluviales de Puerto Rico*, 536 F.2d 443, 445 (1st Cir. 1976), we ruled that "a federal appellate court may not reverse for insufficiency of the evidence in the absence of an unwaived motion for directed verdict." In a long string of cases, we have consistently clung to this view. *See, e.g., Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1343 (1st Cir.1988); *Della Grotta v. State of Rhode Island*, 781 F.2d 343, 349–50 (1st Cir.1986); *R & R Assoc., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir.1984); *Martinez–Moll v. Levitt & Sons*, 583 F.2d 565, 569–70 (1st Cir.1978); *Bayamon Thom McAn, Inc. v. Miranda*, 409 F.2d 968, 971–72 (1st Cir.1969); *Home Ins. Co. of New York v. Davila*, 212 F.2d 731, 733 (1st Cir.1954); *cf. Systemized of New England, Inc. v. SCM, Inc.*, 732 F.2d 1030, 1035–36 (1st Cir.1984) (party may not base motion for judgment n.o.v. on a ground not contained in antecedent directed verdict motion). To be sure, defendants moved for a directed verdict at the end of plaintiffs' case in chief, but that motion was waived by failure to renew it when all the evidence was closed. *See R & R Assoc.*, 726 F.2d at 38; *Gillentine v. McKeand*, 426 F.2d 717, 722–23 (1st Cir.1970).[6]

Appellants' reliance on *Urti v. Transport Commercial Corp.*, 479 F.2d 766 (5th Cir.1973) and *Little v. Bankers Life & Cas. Co.*, 426 F.2d 509 (5th Cir.1970), for a different rule is completely misplaced. In those cases—unlike here—a timely motion for new trial had been made, Fed.R.Civ.P. 59(a), calling into question the weight of the evidence. *Urti*, 479 F.2d at 769; *Little*, 426 F.2d at 511. Thus, notwithstanding that the losing party had neglected to move for an instructed verdict at the close of all the evidence, the Fifth Circuit conducted a limited review of the sufficiency claim to determine the propriety of the district court's denial of the motion for new trial. *Urti*, 479 F.2d at 769; *Little*, 426 F.2d at 511. The same praxis obtains in this circuit. *See, e.g., Freeman*, 865 F.2d at 1343; *Systemized*, 732 F.2d at 1036–37; *R & R Assoc.*, 726 F.2d at 38 & n. 2. But, defendants—who never moved under Rule 50(b) for judgment n.o.v. or under Rule 59(a) for retrial of the section 1983 claims—take no solace from this rule. *See Fugitt v. Jones*, 549 F.2d 1001, 1004 (5th Cir.1977) (plain-

---

**5.** The rule provides in relevant part:

    **(a) Motion for Directed Verdict: When Made; Effect.** A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, .... A motion for a directed verdict shall state the specific grounds therefor....

    **(b) Motion for Judgment Notwithstanding the Verdict.** Whenever a motion for a directed verdict *made at the close of all the evidence* is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judg-

ment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; .... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative....

Fed.R.Civ.P. 50 (emphasis supplied).

**6.** This was assuredly not a case where defendants, though failing to touch the proper bases, were misled by the trial judge or substantially complied with Rule 50. They cannot, therefore, fit within the "substantial compliance" exception which we adopted in *Bayamon Thom McAn* —an exception which we have repeatedly characterized as "very narrow." *Della Grotta*, 781 F.2d at 350.

tiff's failure to make *either* a proper motion for directed verdict *or* a timely motion for new trial precludes even limited *Urti*-type review of alleged absence of evidence). The frock, not fitting, cannot be worn.

■ There is a second reason, too, why appellants' sufficiency-of-the-evidence quest is procedurally defaulted. Although they filed a posttrial motion under Rule 59(e), that motion did not challenge the adequacy of the evidence generally, but dealt solely with the matter of double damages (*i.e.*, the pendent state-law claims). Appellants neglected seasonably to invoke either Rule 50 or Rule 59(a) on sufficiency grounds. Thus, defendants are weaving a new pattern in the course of this appeal; they are presenting us with a question— the sufficiency of the evidence to sustain the verdict—which was never presented at a meaningful time or in a meaningful way to the district court. That is ultracrepidarian, and wrong: on appeal, "we have regularly declined to consider points which were not seasonably advanced below." *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (collecting representative cases); *see also K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir.1989); *Aoude*, 862 F.2d at 896. We have no occasion today to depart from this prudential principle.

The point, we think, requires no further embroidery. This patch is threadbare. For both of the stated reasons, we decline to consider appellants' belated challenge to the sufficiency of the evidence.

### B. *The Pendent Claims.*

Appellants' remaining assignment of error seems a more fetching garment. After the jury returned its verdict, the district judge held a brief hearing, considered ancillary questions of equitable relief, ordered plaintiffs reinstated to their positions, resolved the pendent claims by doubling plaintiffs' lost wages, and ruled that an application for counsel fees was in order. By their timely Rule 59(e) motion, *see supra* No. 3, appellants squarely challenged the doubled award on the ground that Puerto Rico's employment discrimination laws,[7] relied on by the court, "do not afford protection to employees of governmental agencies not operating as public corporations." Defendants fashion much the same raiment on appeal, arguing to us that the district court erred and that, legally, the damages could not be multiplied.

■ At oral argument, plaintiffs suggested that this issue, too, was procedurally defaulted. We find this suggestion to comprise more cry than wool. After all, appellants' failure to move for a directed verdict has no bearing on this aspect: the double-damage claims were not submitted to the jury, but were resolved by the judge. Thus, there was no occasion to interpose a Rule 50 motion. *Cf.* Fed.R.Civ.P. 52(b). Moreover, the record reflects that defendants sufficiently preserved their rights. They alleged in the fourteenth affirmative defense in their answer that they were immune from liability under sections 136 and 146; and, in the parties' proposed pre-

---

**7.** There are two relevant statutes. The first, enacted in 1950, reads in material part:

> Any employer who dismisses, suspends, refuses to reinstate in his job, demotes, reduces the pay, ... of ... any employee or ex-employee; or who in any way discriminates against him, or threatens to commit any such act, on the grounds of his affiliation with a particular political party, shall be civilly liable for a sum equal to double the amount of the damages he may have caused the said employee or ex-employee through such action....

P.R.Laws Ann. tit. 29, § 136 (Law No. 382). The second, initially passed in 1959, reads in material part:

> Any employer who discharges, lays off or discriminates against an employee ... on the

basis of age, as defined hereinafter, race, color, sex, social or national origin or social position, political or religious beliefs of the employee or applicant for employment:
>   (a) shall incur civil liability
>   (1) for a sum equal to twice the amount of damages sustained by the employee or applicant for employment on account of such action....

P.R.Laws Ann. tit. 29, § 146 (Law No. 100). The fact that Law No. 382 uses the words "affiliation with a particular political party" and that Law No. 100 refers to "political ... beliefs" is without significance for our purposes. *See Marin–Piazza v. Aponte–Roque*, 873 F.2d 432, 436 (1st Cir.1989).

trial order (adopted in relevant part by the district court on March 19, 1987), appellants satisfactorily framed the issue that they now pursue. Even were this not so, we would be reluctant to infer waiver anent a line of defense that calls into play the Commonwealth's Eleventh Amendment immunity. *See Edelman v. Jordan,* 415 U.S. 651, 673–78, 94 S.Ct. 1347, 1360–63, 39 L.Ed.2d 662 (1974); *Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1044 & n. 8 (1st Cir.1988); *Echevarria–Gonzalez v. Gonzalez–Chapel,* 849 F.2d 24, 32 (1st Cir.1988). There was no procedural default.

■ The assignment of error has undeniable merit. Recently, a panel of this court, after considering the same two statutes in a materially identical context, concluded that neither law was intended to cover political discrimination suits against the government of Puerto Rico or to permit official-capacity commonwealth actors to be held liable for double damages.[8] *Marin–Piazza v. Aponte–Roque,* 873 F.2d 432, 436 (1st Cir.1989). We concluded that double damages were also barred on the ground that, vis-a-vis these statutes, Puerto Rico's eleventh amendment immunity from suit in federal district court had not been waived. *Id.* at 436–37. Finally, we disposed of any basis for claims against defendants in their individual capacities, pointing out that "damages are not available under the statute against defendant in her personal capacity because as such she was not plaintiffs' 'employer'". *Id.* at 437.

*Marin–Piazza* is custom-tailored to suit this situation. The cases are spun from exactly the same thread. Under well-recognized principles of *stare decisis,* the decision is binding on this panel. *See, e.g., United States v. Reveron Martinez,* 836 F.2d 684, 687 (1st Cir.1988); *Lacy v. Gardi-*

*no,* 791 F.2d 980, 985 (1st Cir.), *cert. denied,* 479 U.S. 888, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986). Therefore, the award of double damages under local law must be reversed.

## IV

Having untangled the skein, we need go no further.[9] We conclude that, although the first notice of appeal was a nullity, the second notice of appeal is properly before us and calls the entire judgment into question. For the reasons stated, we reject defendants' belated attempt to challenge the sufficiency of the evidence on the federal claims. At the same time, we relieve defendants from the burden of double damages on the pendent claims on the authority of *Marin–Piazza.*

In summary, Appeal No. 87–1850 is dismissed. In Appeal No. 88–2198, the judgments are affirmed except as to double damages, and reversed in respect thereto. The cause is remanded to the district court for the entry of amended judgments and for further proceedings consonant herewith.

*Affirmed in part; reversed in part; remanded. No costs.*

---

8. We did note that, under section 146, liability could inhere against "such agencies or instrumentalities of the Government of Puerto Rico as may be operating as private business or enterprises." *Marin–Piazza,* 873 F.2d at 436 (quoting statute). The exception is inapposite here. We have been offered no argument, nor can we imagine any basis for contending, that DSS is an agency operating as a private business.

9. Defendants have failed meaningfully to brief or argue any challenge to the lower court's award of counsel fees. Accordingly, the issue is by the boards; it is settled beyond peradventure that matters neither briefed nor argued are waived. *See United States v. Kobrosky,* 711 F.2d 449, 454 (1st Cir.1983); *Tedder v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir.1979); *see also United States v. McNatt,* 842 F.2d 564, 567 (1st Cir. 1988) (one-sentence allusion to theory insufficient to raise an issue for appeal).