NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1938
_____

DARYL MURRAY,

Appellant

v.

BEVERAGE DISTRIBUTION CENTER, "BDCI";
JFFEREY A. HONICKMAN, Individually and in his capacity as Chief Executive Officer
for BDCI;
GWEN DOLCEAMORE, Individually and in her capacity as Vice President of
Informational systems for BDCI;
JEFFREY M. STANLEY, Individually and in his capacity as In-House Counsel and
Executive Vice President for BDCI;
LEWIS I. GANTMAN, Individually and in his capacity as In-House Counsel and
Executive Vice President for BDCI;
SANTO BONANNO, Individually and in his capacity as Vice President of Informational
Systems for BDCI;
WALT WILKINSON, Individually and in his capacity as Chief Financial Officer for
BDCI;
JENNIFER L. HALE-EAGLAND, Individually;
BLANK ROME LLP, A Limited Liability Partnership


_____


On Appeal from the United States District Court
for the District of New Jersey
(No. 1-09-cv-05403)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2013


1

Before: SLOVITER, FUENTES, and ROTH, *Circuit Judges*

(Opinion Filed: July 29, 2013)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

Daryl E. Murray appeals the District Court's Order granting summary judgment to Beverage Distribution Center, et al. ("BDCI") on the issue of whether BDCI conducted discriminatory hiring practices against Murray. Murray also opposes the District Court's Order denying his Motion to Alter or Amend the Order granting summary judgment in favor of BDCI. For the following reasons, we will affirm the decisions of the District Court.

## I. Background

Because we write primarily for the parties, who are well acquainted with this case, we recite only the facts essential to our disposition of this appeal. BDCI is headquartered in Pennsauken, New Jersey, and is a service company which provides administrative warehouse functions for Pepsi Cola and National Brand Beverages, as well as Canada Dry Delaware Valley. On January 8, 2007, Murray submitted his resume to BDCI through a third party, The WorkPlace Group ("WPG"), for a Project Manager position. BDCI contracted with WPG to handle recruiting for open employment positions within BDCI. A WPG recruiter, Sara Salvatore, subsequently contacted Murray to discuss his candidacy and to complete a required assessment of Murray for the application process. Murray, by his own admission, "immediately put the brakes on the conversation" and

2

refused to continue with the application process. App. 188. Murray expressed concerns to Salvatore that one of the Hiring Managers at WPG, Gwen Dolceamore, had previously discriminated against him, and he therefore refused to cooperate with the application process until he was assured Dolceamore was not involved in evaluating his candidacy.

WPG did not refer Murray to BDCI for consideration for the Project Manager position because of his "very poor attitude" and lack of completing the required assessment. App. 221, 225. After not being contacted by anyone from WPG or BDCI, Murray sent an e-mail to Salvatore indicating that he planned to file a legal claim against BDCI for discrimination. Salvatore forwarded the e-mail to Jeffery Stanley, who was then BDCI's Senior Vice President of Human Resources. Not long thereafter, Stanley contacted Murray via telephone to determine if there was any possible resolution between the parties. Murray stated that there was no way of resolving the situation other than through legal action.

On May 19, 2007, Murray submitted a cover letter and resume directly to Stanley at BDCI for another Project Manager position. Stanley wrote to Murray, advising him to contact Mila Edelman at WPG, and to complete the assessment and application process. Murray did not follow through. Eventually, Edelman e-mailed Murray telling him to contact her and to complete the assessment process. Murray called her back but never completed the application. In October 2007, BDCI hired a different agency, Source One Technical Solutions ("Source One"), to handle recruiting. Murray never applied for a job through Source One, even though there were open positions.

In October 2009, Murray, an African-American male, filed a complaint in the District of New Jersey against BDCI and various officers and vice-presidents of the company (collectively "BDCI"), alleging race and gender discrimination, and retaliation, in violation of 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 to -49. He also asserted that BDCI and its CEO, Defendant Jeffrey Honickman, negligently hired, supervised, and trained the other Defendants.

In September 2009, BDCI filed a motion for summary judgment which the District Court granted on November 23, 2010. Murray, if he so chose, had 28 days to file a motion to alter or amend the judgment, pursuant to Fed. R. Civ. P. ("Rule") 59(e). Murray filed a Rule 59(e) motion on the last of the 28 days, December 21, 2010. However, the court clerk mistakenly recorded the motion as being filed on December 22, 2010, a day outside of the 28-day limit. BDCI never contested the timeliness of the Rule 59(e) motion.

Ultimately, the District Court denied Murray's Rule 59(e) motion on grounds of timeliness and on the merits. On February 23, 2011, Murray wrote a letter to the District Court notifying the Court of the clerical error, and asking the Court to amend its Opinion dismissing his Rule 59(e) motion on the basis of timeliness. In the letter, Murray expressed his concerns that unless the error was rectified, his right to appeal would be prejudiced because an untimely Rule 59(e) motion would not toll the thirty-day period to file a notice of appeal under Fed. R. App. P. (4)(a)(4). On March 9, 2011, the District Court directed the Clerk of Court to correct the docket, and to amend its February 14,

4

2011 Opinion to delete the holding that Murray's December 21, 2010 motion was untimely.

On April 7, 2011, Murray filed a notice of appeal. Although BDCI did not contest the timeliness of Murray's appeal, we appointed amicus counsel to address:

> whether this Court has jurisdiction over [Murray's] appeal, and, in doing so, should specifically address the following issues: (1) whether appellant's motion filed in the District Court on February 23, 2011 (docket entry #116) pursuant to Fed. R. Civ. P. 52(b) tolled the time to appeal, *see Aybar v. Crispin-Reyes*, 118 F.3d 10, 13-14 (1st Cir. 1997); Fed. R. App. P. 4(a)(4); and (2) whether the February 23, 2011 motion, including its cover letter, may be treated as a request to the District Court for relief under Rule 4(a)(5) of the Federal Rules of Appellate Procedure.

Order dated May 17, 2012.

## II. Discussion

### A. Jurisdiction

We must first determine whether Murray's February 23, 2011 letter tolled the thirty-day period to file a notice of appeal after the District Court's entry of judgment under Fed. R. App. P. (4)(a)(4).[1] We hold that it does.

In *Jusino v. Zayas*, 875 F.2d 986, 990 (1st Cir. 1989), the First Circuit addressed a similar factual scenario. There, a clerk had mistakenly entered the district court's judgment into the docket on June 2, 1987 instead of June 5, 1987. *Id.* at 988. On June 19, 1987, the defendants submitted a Rule 59(e) motion to alter or amend the judgment; however, on July 17, 1987, the district court denied the motion because it was not filed

---

[1] The timeliness of the Notice of Appeal speaks directly to whether we have jurisdiction over the case at hand. 28 U.S.C. § 2107. Thus, the issue of timeliness is an essential issue, regardless of whether it was contested by BDCI.

5

within ten days of the mistakenly recorded entry of judgment.[2]  *Id.*  On August 6, 1987, the defendants filed a motion requesting reconsideration of the July 17, 1987 Order based on the clerk's error.  *Id.*  On October 11, 1988, the motion for reconsideration was granted by the district court on the timeliness issue; however, the motion was ultimately denied on the merits.[3]  *Id.* at 988-89.  The defendants filed a notice of appeal on November 9, 1988.  *Id.* at 989.

On appeal, the plaintiffs argued that defendants' November 9, 1988 notice of appeal was untimely because it was not filed within thirty days of the court's July 17, 1987 Order.  The First Circuit disagreed, holding that by granting defendants' motion for reconsideration in its October 11, 1988 Order, the district court impliedly invalidated the July 17, 1987 Order and Opinion and resuscitated the appellants' original, timely, Rule 59(e) motion.  *Id.* at 990.  As such, the denial of that motion was not final until the Order and Opinion was entered on the docket on October 11, 1988, triggering a new thirty-day appeal period which concluded on November 10.  *Id.*

The instant case follows a similar factual path as *Jusino*.  Murray's ability to appeal hinges on the timeliness of his original Rule 59(e) motion, filed on December 21,

---

[2] At the time of *Jusino*, a Rule 59(e) motion had to be filed within ten days of the filing of the judgment it sought reconsideration of.  Fed. R. Civ. P. 59(e) (1987).  The ten days included only working days and did not include the day judgment was entered.  Fed. R. Civ. P. 6(a) (1987).  In 2009, the Rules were amended so that Rule 59(e) provided for a 28-day filing period.  *See* Fed. R. Civ. P. 59(e) (2009).  The amendments also altered Rule 6(a) to "count every day, including intermediate Saturdays, Sundays, and legal holidays."  Fed. R. Civ. P. 6(a).

[3] Appellants' motion for reconsideration was granted in an Order and Opinion dated October 7, 1988; however, it was not filed until October 11.

2010. Similar to the defendants in *Jusino*, whose timely Rule 59(e) motion was prejudiced by a clerical error, Murray's Rule 59(e) motion was timely, but mistakenly entered in the docket a day late. As a result, Murray's Rule 59(e) motion was denied due, in part, to timeliness, in the District Court's February 14, 2011 Order and Opinion. Furthermore, like the appellants in *Jusino*, Murray requested reconsideration via his February 23, 2011 letter, and was granted reconsideration in the March 9, 2011 Order and Opinion. *Id.* As such, the March 9, 2011 Order and Opinion served as the final judgment on Murray's original Rule 59(e) motion. Therefore, the March 9, 2011 Order and Opinion served to impliedly invalidate the February 14, 2011 Order and Opinion, thus triggering a new thirty-day appeal period, ending on April 8, 2011. Therefore, Murray's appeal, filed on April 7, 2011, was timely, and we have jurisdiction over it pursuant to 28 U.S.C. § 1291.

**B.     The Merits of Murray's Claims**

On a motion for summary judgment, we shall affirm the granted motion so long as the evidence demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, we must view all facts and inferences in a light favorable to the non-moving party. *Spence v. ESAB Group, Inc.*, 623 F.3d 212, 216 (3d Cir. 2010). We exercise plenary review over the District Court's decision. *Lizardo v. United States*, 619 F.3d 273, 276 (3d Cir. 2010).

In order to establish a prima facie case for discriminatory hiring practices, a plaintiff must show:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In the instant case, we agree with the District Court that Murray does not satisfy the second element listed above, as he never completed the application process.[4]

We have held that failure to formally apply for a job will not automatically bar a plaintiff from establishing a prima facie case for discriminatory hiring. *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990). However, if the plaintiff did not apply, he must show that he made every reasonable effort to convey his interest in the job to his employer, *Id.*, he was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or he had a genuine and real interest in the position but reasonably believed that a formal application would be futile. *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1415 (3d Cir. 1990).

Murray contends that he conveyed his interest in the BDCI positions because he submitted his resume to and was in contact with WPG and BDCI personal. These actions do not satisfy the reasonableness standard established in *EEOC v. Metal Service*

---

[4] Though BDCI argues this issue is collaterally estopped by a New Jersey state court decision finding that Murray did not apply for any of the positions, *see* App. 204-06; *Murray v. Honickman d/b/a Beverage Distribution Center, Inc., et al.*, Superior Court of New Jersey, Law Division, Burlington County Docket No. BUR-L-01998-07, we need not address this argument, as we have made our own independent determination that Murray did not complete the application process.

8

*Company*. In that case, the plaintiffs did everything reasonably possible to convey their interest in applying for a job by "follow[ing] precisely the procedure established by [the employer] for how a person applies for a job at the company." *Metal Serv.*, 892 F.2d at 349. Murray, on the other hand, submitted his resume to WPG/BDCI on January 8, 2007, but refused to complete the assessment BDCI required of its applicants. Murray subsequently refused to submit his material to WPG for a similar position, despite the fact that Stanley informed him that he would be given a full chance to apply if he contacted WPG recruiter Edelman. Edelman even tried to reach out to Murray, and he, yet again, refused to partake in the required assessment. Additionally, Murray never submitted his resume for subsequent openings once BDCI hired Source One to handle the recruiting of applicants. Therefore, Murray failed to manifest the ultimate indicium of conveying one's interest in an open position: completing the company's processes required for consideration. *See id*.

Murray's arguments on this point are meritless. Murray contends: 1) it would have been a "futile gesture" to continue to apply to BDCI; 2) he had previously showed interest and applied for a position at BDCI, and therefore BDCI should have kept his application and considered him every time a position, for which he qualified, opened; and 3) WPG and Source One were unlicensed. Whether WPG and Source One were licensed or not has no bearing on whether BDCI discriminated against Murray in the hiring process. As for Murray's "futile gesture" argument, nothing in the factual record indicates that Murray applying to BDCI would have been futile. In contrast, BDCI and WPG personnel repeatedly encouraged Murray to apply for the open positions through

9

the processes they had set in place. Lastly, there is no basis whatsoever for Murray to argue that his resume should be saved and considered for every subsequent opening he qualifies for. A company is not required to look at every qualified applicant they have *ever had* for open positions. Such a burden would lead nearly every company to be liable to suit for discriminatory hiring practices whenever a prior applicant was not considered. As such, Murray's arguments fail and he cannot establish a prima facie case of discriminatory hiring. As the District Court recognized, Murray's retaliation and negligence claims fail for the same reason. *See Murray v. Beverage Distrib. Ctr.*, 757 F. Supp. 2d 480, 488-89 (D.N.J. 2010).

Viewing all facts and making all inferences in a light most favorable to Murray, there is no genuine dispute as to any material fact. Accordingly, BDCI is entitled to judgment as a matter of law.

### III. Conclusion

For the reasons discussed above, we will affirm the decisions of the District Court.

10