908 F.2d 1512
 53 Fair Empl.Prac.Cas. 1165,
54 Empl. Prac. Dec. P 40,158, 17 Fed.R.Serv.3d 774,
62 Ed. Law Rep. 41
 Gladys King BURNS, Plaintiff-Appellant,
v.
GADSDEN STATE COMMUNITY COLLEGE, and Robert W. Howard,
individually and in his capacity as President of
Gadsden State Community College,
Defendants-Appellees.
Gladys King BURNS, Plaintiff-Appellant,
v.
GADSDEN STATE COMMUNITY COLLEGE, Defendant-Appellee.
 No. 89-7426.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 15, 1990.
 
 Joe R. Whatley, Jr., Patricia Fraley, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., for plaintiff-appellant.
 R. Kent Henslee, John T. Robertson, IV, Henslee, Bradley & Robertson, Gadsden, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, Chief Judge, JOHNSON and ANDERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from a grant of summary judgment in favor of defendants-appellees, Gadsden State Community College and its former President, Dr. Robert Howard, in an age and sex discrimination action brought by Gladys King Burns, plaintiff-appellant. Plaintiff alleged that the defendants discriminated against her on the basis of her age and sex in their refusal to hire her. The court below granted summary judgment, concluding that the plaintiff had failed to establish a prima facie case of either sex or age discrimination. We reverse and remand.
 
 I. BACKGROUND
 
 2
 The plaintiff-appellant in this case, Gladys King Burns, applied for the position of Director of Economic Development at Gadsden State Community College in Gadsden, Alabama, in May 1986. A publicly posted announcement of the opening declared that the Director would assume the following responsibilities: developing, directing, and coordinating business and industrial training programs at the College and in the community; establishing credibility between the community and training programs offered by businesses, industries, and governmental and other training agencies; and assisting local and state economic development agencies in the establishment and expansion of business and industry. The position did not involve any classroom teaching responsibilities. The minimum qualifications for the position were listed as (1) a Master's degree in Administration or a related area, advanced degree preferred; (2) five years administrative experience; (3) five years industrial work experience; and (4) three years teaching experience. The Position Announcement stated that those applicants already employed at the College would be given preference.
 
 
 3
 Burns' resume and job application indicated that she was a fifty-nine year old woman who held a Ph.D. in Educational Administration and Planning from the University of Alabama. She had eighteen years of teaching experience, four years of college administrative experience, and six years of experience in business administration. She had worked as owner/manager of a retail store in Gadsden and as director of staff at a real estate business. Burns' resume also indicated that she was born and reared in Gadsden and that she maintained close ties to the community.
 
 
 4
 The defendant Robert Howard was president of Gadsden State Community College at the time the Director position came open and was responsible for hiring someone to fill the position. (Howard deposition). After receiving a number of applications for the position, and after interviewing some of the applicants, Howard hired Bryan Stone. (Howard deposition). Stone was a male applicant who was younger than Burns. He had held a similar position at Alabama Technical College (of which Howard had been President, and which in 1985 became part of Gadsden State Community College) and was a "known quality" [sic] to Howard. (Howard affidavit; Stone affidavit).
 
 
 5
 Burns subsequently filed a complaint against the College and Dr. Howard, alleging age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621, et seq., and sex discrimination in violation of 42 U.S.C. Sec. 1983. She later brought a second complaint against both defendants, alleging sex discrimination in violation of Title VII. The Title VII complaint arose from the same facts as were involved in the first complaint, and the district court subsequently consolidated the two cases.
 
 
 6
 Defendants filed a motion seeking summary judgment on all of the plaintiff's claims. The motion itself asserted only that the plaintiff's evidence was insufficient as a matter of law to make out a cause of action on any of her claims.[1] Later materials submitted by the defendants clarified their position. Dr. Howard asserted that he did not hire the plaintiff for the Director position because she did not meet the minimum qualifications, i.e. she did not have five years industrial work experience. (Howard affidavit). The district court found that the defendants' assertion that Burns did not meet the minimum requirements for the position was uncontroverted in the record. The court therefore granted the defendants' motion for summary judgment.
 
 
 7
 On appeal, the plaintiff argues that she submitted sufficient evidence to withstand the defendants' motion for summary judgment. She contends that she submitted evidence to show that she was minimally qualified for the position and that the defendants' stated reason for not hiring her was pretextual. In particular, Burns argues that the district court erred in failing to consider two key affidavits (the "May 1 affidavits"), which were submitted the day after the court's filing deadline. Those two affidavits, she argues, constitute direct evidence of sex discrimination and create a genuine issue of material fact as to whether the defendants' asserted reasons for refusing to hire her were pretextual. We agree that the district court erred in refusing to consider the May 1 affidavits. Taking those two affidavits into consideration, we find that the plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether the defendants discriminated against her on the basis of her gender. We therefore reverse the district court's grant of summary judgment on plaintiff's Title VII and section 1983 claims. We remand for the district court to reconsider, in light of the May 1 affidavits, the defendants' motion for summary judgment on the ADEA claim.
 
 II. DISCUSSION
 A. The May 1 Affidavits
 
 8
 To place our discussion of the May 1 affidavits in context, it is necessary to review briefly the events that transpired in the court below. The defendants filed a "bare-bones" motion for summary judgment on March 30, 1989. This motion, filed without any accompanying documentary evidence or legal argument, asserted that there were no disputes of material fact and that the defendants were entitled to summary judgment as a matter of law. The district court framed a simultaneous submission schedule that gave both parties twenty days, until April 20, to submit briefs and materials in support of or in opposition to the motion for summary judgment. The defendants did not file any support for their motion until the last possible day, April 20.
 
 
 9
 Plaintiff filed a response to the motion for summary judgment on April 14, in which she complained that she was having difficulty in responding to the defendants' motion since she did not know the facts and legal theories upon which the motion was based. On April 20, the plaintiff sought a revision of the submission schedule, advising the court that she had had no opportunity to respond to the materials submitted by the defendants. The district court, apparently recognizing the plaintiff's difficulty, allowed her five extra days, until April 28, to respond to the defendants' brief and evidence. On April 27, the plaintiff informed the district court by letter that the defendants had not yet responded to plaintiff's second and third interrogatories, served on January 6, 1989, and March 2, 1989. The court had previously issued an order to compel the answers to the second interrogatories. The plaintiff asked the court to delay hearing the defendants' motion for summary judgment until the defendants answered the interrogatories and the plaintiff was afforded an opportunity to respond adequately.
 
 
 10
 On April 28, the last day plaintiff had to respond, she submitted a brief in opposition to the motion for summary judgment. Plaintiff presented her legal arguments opposing summary judgment on the merits and again argued that summary judgment was premature. On May 1, the plaintiff filed the affidavits of Gerald and Callie Waldrop, two employees of Gadsden State Community College. Gerald Waldrop asserted that Dr. Howard had declared, in the context of a discussion regarding filling more Dean's positions with women and blacks, that "no woman would be named to a B scheduled job." The position for which the plaintiff applied was a B schedule job. Callie Waldrop asserted in her affidavit that there had been a series of instances at the College in which older and more experienced female employees of the College had been denied administrative positions in favor of younger males.
 
 
 11
 The district court subsequently entered summary judgment in favor of the defendants, finding that the plaintiff had failed to sufficiently controvert the defendants' assertion that plaintiff was unqualified for the Director position. The court expressly declined to consider the Waldrop affidavits.[2] Plaintiff filed a motion for reconsideration of the judgment, requesting again that the court consider the Waldrop affidavits. Plaintiff pointed out to the district court that Rule 56(c) allows a nonmovant at least 10 days to respond to a motion for summary judgment and that she did not receive 10 days to respond to the supporting materials submitted by the defendant. The district court refused to reconsider its judgment.[3]
 
 
 12
 Rule 56(c) provides in relevant part: "The motion [for summary judgment] shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits." The courts have uniformly held that the purpose of Rule 56(c) is to permit the nonmoving party a reasonable and meaningful opportunity to challenge a motion for summary judgment. See, e.g., Cia. Petrolera Caribe, Inc v. Arco Caribbean, Inc., 754 F.2d 404, 410 (1st Cir.1985) (holding that the rules of procedure are structured to provide the nonmovant with substantially more time for filing affidavits than the moving party because the nonmoving party should have an opportunity to examine and reply to the moving party's papers before the court considers them); Lewis v. Faulkner, 689 F.2d 100 (7th Cir.1982) (district court cannot act on a motion for summary judgment without giving the opposing party a reasonable opportunity to submit affidavits that contradict the affidavits submitted in support of the motion and that demonstrate a genuine issue of material fact); Winbourne v. Eastern Air Lines, Inc., 632 F.2d 219 (2d Cir.1980) (purpose of Rule 56(c) is to permit nonmoving party a meaningful opportunity to challenge motion for summary judgment).
 
 
 13
 Recognizing the importance of giving the nonmovant a meaningful opportunity to respond to a motion for summary judgment, this circuit has strictly enforced the requirement of a 10 day advance notice that the court will take a motion for summary judgment under advisement as of a certain date. E.g., Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir.1985) (holding that when a court sua sponte converts a motion to dismiss into a motion for summary judgment, the court must give at least 10 days notice to the nonmovant). The reasons for such a requirement "are premised on the fact that disposition of a case on summary judgment grounds represents a final adjudication on the merits. It forecloses subsequent litigation on the matter; it is accordingly important that proper notice be given so as to insure 'opportunity to present every factual and legal argument available.' " Griffith, 772 F.2d at 825 n. 4 (citing Finn v. Gunter, 722 F.2d 711, 713 (11th Cir.1984)).
 
 
 14
 This court recently reaffirmed, in the context of an employment discrimination suit, the importance of giving the nonmovant a meaningful opportunity to respond to a motion for summary judgment. Grigsby v. Reynolds Metals Co., 821 F.2d 590, 593-94 (11th Cir.1987), arose in a context very similar to the instant case. The plaintiff in Grigsby brought claims of discrimination in hiring under Title VII and the ADEA. The defendant moved for summary judgment, asserting that the plaintiff was not hired for the position she sought because she was unqualified. The district court ordered simultaneous submission of evidence in support of and in opposition to the motion for summary judgment. On appeal from the court's grant of summary judgment for the defendant, the plaintiff complained that the simultaneous submission schedule left her with insufficient opportunity to respond to the defendant's evidence. This court noted the difficulties caused by the shifting burdens of proof involved in a case brought under Title VII and the ADEA, and we agreed with the plaintiff that, as a general rule, "when the defendant has offered evidence of a legitimate, nondiscriminatory reason for its employment decision, the plaintiff should not be denied the opportunity to submit additional evidence of pretext after seeing the defendant's evidence of justification." Id. at 594.[4] See also Alghanim v. Boeing Co., 477 F.2d 143 (9th Cir.1973) (where the movant submitted affidavits in support of motion for summary judgment within 10 days of the hearing on the motion, the district court should have allowed the nonmovant extra time in which to respond); Hooks v. Hooks, 771 F.2d 935 (6th Cir.1985) (viewing with leniency the fact that the nonmovant's affidavits were filed late and noting that until the movant's supporting affidavits were filed, the nonmovant could not know what facts she needed to controvert).
 
 
 15
 Rule 6(d) of the Federal Rules of Civil Procedure, read in conjunction with Rule 56(c), further supports the principle that the rules of procedure are intended to provide the nonmovant with a reasonable and meaningful opportunity to respond to the legal theories and facts as asserted by the party moving for summary judgment. Rule 6(d) provides: "When a motion is supported by affidavit, the affidavit shall be served with the motion; and ... opposing affidavits may be served not later than 1 day before the hearing, unless the court permits them to be served at some other time." The rule clearly contemplates that, in the usual case, the party moving for summary judgment will present its legal theories and assertions of fact at the time it makes the motion. Rule 56(c), read in conjunction with Rule 6(d), contemplates that the nonmovant will have at least 10 days in which to respond to those theories and facts before the court takes the summary judgment issue under advisement.
 
 
 16
 Applying the foregoing principles to the facts of this case, we conclude that plaintiff's May 1 affidavits were timely and that the district court erred in refusing to consider them. The defendants' March 30 motion for summary judgment was "bare-boned." It failed to apprise plaintiff of the facts and legal theories on the basis of which defendants claimed to be entitled to summary judgment. It was not until defendants' supporting affidavits and brief were filed on April 20 that plaintiff was thus informed. We conclude that plaintiff should have been allowed at least 10 days after April 20 to file opposing affidavits as contemplated by Rule 56(c). Since April 30 was a Sunday, the affidavits filed by plaintiff on May 1 were timely.
 
 
 17
 B. Summary Judgment on the Gender Discrimination Claim
 
 
 18
 Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if "there is no genuine issue as to any material fact and [if] the moving party is entitled to a judgment as a matter of law." Summary judgment is appropriate against a party if that party fails to present sufficient evidence to establish the existence of an element essential to the party's case, and on which the party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 19
 At trial, in order to prove discriminatory failure to hire in violation of Title VII,[5] the ADEA,[6] and section 1983,[7] the plaintiff must prove by a preponderance of the evidence a prima facie case of employment discrimination. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir.1989).[8] The familiar analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is properly used when the plaintiff attempts to prove her claim through circumstantial evidence. Bell v. Birmingham Linen Service, 715 F.2d 1552, 1556 (11th Cir.1983), cert. denied, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). A prima facie case of discrimination may also be proven by direct evidence of age or sex discrimination. See EEOC v. Alton Packaging Corp., 901 F.2d 920, 923-24 (11th Cir.1990); EEOC v. Beverage Canners, Inc., 897 F.2d 1067, 1070-72 (11th Cir.1990). Such evidence, if believed, proves the existence of a fact in issue without inference or presumption. Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1558 n. 13 (11th Cir.1988). Where the plaintiff presents direct evidence of discriminatory motive, the analytical framework established in McDonnell Douglas Corp. is inapplicable. EEOC v. Beverage Canners, Inc., at 1070-71. If the plaintiff presents direct evidence that the employer acted with discriminatory motive and the trier of fact believes it, then the employer can avoid liability only if he or she satisfies the trier of fact by a preponderance of the evidence that the same employment decision would have been reached in the absence of the discriminatory motive. See Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989) (plurality opinion); EEOC v. Alton Packaging Corp., at 923-24; EEOC v. Beverage Canners, Inc., at 1071-72; Jones v. Gerwens, 874 F.2d at 1539 n. 8. "Production of nondiscriminatory reasons is not enough in a direct evidence case," Alton Packaging Corp., at 925; the defendant must prove that there was a gender-neutral reason for its employment decision, id.
 
 
 20
 In the instant case, the plaintiff has presented direct evidence that her gender played a motivating part in the defendants' decision to refuse to hire her for the Director position. In one of the May 1 affidavits, Gerald Waldrop, an employee of Gadsden State Community College, states that he participated in a private discussion with Howard and with George Beaube, the College's Technical Dean, concerning the hiring of more blacks and women to fill Dean's positions (Schedule B positions) at the College. Howard and Beaube stated that a lower position was sufficient for a woman and that "no woman would be named to a B scheduled job." The position for which plaintiff applied was a B schedule job, and the author of the statement made the employment decision at issue. Such evidence is direct evidence of discriminatory motive. See EEOC v. Alton Packaging Corp., at 924 (general manager's remark that "if it was his company, he wouldn't hire any black people," constituted direct evidence of discriminatory motive in failing to promote black employee when general manager was responsible for promotion decisions at issue); EEOC v. Beverage Canners, Inc., at 1068-69, 1070-71 & n. 9 (racially derogatory remarks made by plant manager and plant supervisor constituted direct evidence of racial motivation in failure to rehire employee who had been laid off).[9]
 
 
 21
 We conclude that the summary judgment record, viewing all reasonable inferences in favor of the plaintiff, contains sufficient evidence to establish that defendants declined to hire plaintiff because of her sex.
 
 
 22
 Defendants also argue that even assuming a discriminatory motive, Burns would not have been hired in any event because she was unqualified for the position. Thus, defendants argue under Price Waterhouse v. Hopkins, --- U.S. at ----, 109 S.Ct. at 1795, that they can avoid liability notwithstanding the presence of a discriminatory motive. At the summary judgment stage, the employer can prevail on this issue only if the record evidence that its employment decision was not based on discrimination is so strong that a reasonable trier of fact must so conclude; in other words, there must be no genuine issue of fact but that the employer would have made the same employment decision even absent the discriminatory motive. Because there are genuine issues of fact regarding this issue, we conclude that defendants are not entitled to summary judgment.
 
 
 23
 The minimum qualifications for the Director position require five years industrial work experience, defined by Dr. Howard as experience in heavy industry. Plaintiff's work experience is confined to businesses other than heavy industry. Plaintiff, however, points out that the job responsibilities listed in the Position Announcement place as much emphasis on establishing training programs for work in businesses as they do on training students for work in heavy industry. A reasonable inference from the Position Announcement would be that work experience in businesses other than heavy industry would satisfy the requirements of the position. Thus, the factfinder could reasonably conclude that plaintiff did meet the minimum qualifications.[10]
 
 
 24
 Moreover, plaintiff contends that by narrowly defining the acceptable work experience as experience in heavy industry, the defendants were attempting to carry out their intent that "no woman would be named to a B scheduled job." Plaintiff's direct evidence of discrimination, together with the reasonable inferences from the discrepancy between the posted job responsibilities and Dr. Howard's narrow interpretation of the minimum qualifications, create a genuine issue of fact as to whether the defendants invented their narrow interpretation of the job qualifications with the intention of discriminating against female applicants.
 
 
 25
 We conclude that, viewing the evidence in the light most favorable to the plaintiff, see Jones v. Gerwens, 874 F.2d at 1538, the plaintiff has created genuine issues of material fact as to whether the defendants discriminated against her on the basis of her gender in violation of Title VII and section 1983. We therefore reverse the summary judgment in favor of the defendants on those two claims.
 
 
 26
 C. Summary Judgment on the Age Discrimination Claim
 
 
 27
 With regard to plaintiff's age discrimination claim, we conclude that the district court's resolution of defendants' motion for summary judgment was premature. At the time the court addressed this issue, the defendants had not yet responded to plaintiff's interrogatories. Because the district court was aware of this problem and because the defendants' responses could have a direct bearing on the plaintiff's ability to counter the defendants' motion for summary judgment on this claim, we conclude that the district court should have delayed its decision on the merits of the defendants' motion until the responses to the interrogatories had been filed. See Snook v. Trust Co. of Georgia Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir.1988) (generally, summary judgment inappropriate when party opposing the motion has been unable to obtain responses to his or her discovery requests). Moreover, the district court failed to consider the May 1 affidavits in ruling on plaintiff's age discrimination claim. Callie Waldrop's affidavit, in particular, asserts facts relevant to plaintiff's ADEA claim. We therefore remand this issue for the district court's reconsideration.
 
 III. CONCLUSION
 
 28
 For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 29
 REVERSED and REMANDED.
 
 
 
 [1]
 The defendants also asserted in their motion for summary judgment that the section 1983 claim was not actionable because it was based on the same facts and circumstances for which the plaintiff sought relief under Title VII. The district court did not rule on this argument, and the defendants do not raise it on appeal. We therefore decline to address this issue
 
 
 [2]
 The district court noted that even if it had considered the Waldrop affidavits, the affidavits would not have changed the court's conclusions. In its opinion, however, the court did not discuss the affidavits, and we conclude, infra, that the affidavits should have changed the court's conclusions
 
 
 [3]
 The district court treated the plaintiff's motion for reconsideration as involving only one of the plaintiff's complaints (Civil Action 88-AR-0961-M, the complaint alleging violations of the ADEA and section 1983), and it deemed the plaintiff to have abandoned her Title VII claim (Civil Action 88-AR-1502-M). The court noted that the Waldrop affidavits did not support a claim of age discrimination, and therefore summarily dismissed their importance. The court appears to have overlooked that Civil Action 88-AR-0961-M also involved a claim of sex discrimination, and therefore the direct evidence of sex discrimination asserted in the Waldrop affidavits is clearly relevant to that action. Moreover, it was clear from the content of the plaintiff's motion to reconsider that she was referring to all three claims of discrimination contained in the consolidated action. The district court, therefore, should not have deemed the plaintiff to have abandoned her Title VII claim
 
 
 [4]
 In Grigsby, we declined to reverse because Grigsby failed to object to the simultaneous submission schedule and failed to request permission to submit additional evidence of pretext to rebut defendant's evidence, and because Grigsby never even alleged that she had any relevant additional evidence. 821 F.2d at 594
 
 
 [5]
 Title VII provides, in relevant part:
 (a) It shall be an unlawful employment practice for an employer--
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....
 42 U.S.C. Sec. 2000e-2 (1981).
 
 
 [6]
 The ADEA provides:
 (a) It shall be unlawful for an employer--
 (1) to fail or refuse to hire or to discharge an individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....
 29 U.S.C. Sec. 621, et seq.
 
 
 [7]
 Section 1983 states:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
 42 U.S.C. Sec. 1983 (1981).
 
 
 [8]
 The analysis set forth by the Supreme Court for use in Title VII cases involving claims of intentional discrimination has been adopted by this court for discrimination cases arising under the ADEA, Grigsby v. Reynolds Metals Co., 821 F.2d 590, 594 (11th Cir.1987) (McDonnell Douglas approach adopted for ADEA cases), and under section 1983, Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir.1982) (McDonnell Douglas approach adopted for section 1983 cases involving discrimination)
 
 
 [9]
 Defendants argue that Howard's alleged statement was not made in the context of hiring someone to fill this particular position, and therefore it is not direct evidence of discrimination against this plaintiff. Defendants' argument overlooks the fact that Howard's statement evidences an intent to refuse to hire females for an entire class of positions, and that the job of Director of Economic Development was one of those positions. It is contrary to the evidence and to common sense to suggest that Howard intended his statement to mean that "no woman would be named to a B schedule job," except for the Director of Economic Development position. Although stray comments in the workplace may not constitute direct evidence of discriminatory motive, see Price Waterhouse, --- U.S. at ----, 109 S.Ct. at 1804 (O'Connor, J., concurring), the statement at issue in this case was directly related to the employer's hiring decisions involving the kind of position for which the plaintiff applied. Moreover, this court has held that direct evidence of the decisionmaker's discriminatory motive regarding one employment decision may be used as evidence of that decisionmaker's discriminatory motive in making a similar employment decision. See EEOC v. Alton Packaging Corp., at 924 n. 6 (racially discriminatory statements made in the context of hiring employees constituted direct evidence of discriminatory decisions in promoting employees because there was no reason to think that the negative racial attitudes evidenced by the statements affected only hiring, and not promotion, decisions). We conclude, therefore, that defendants' argument has no merit
 
 
 [10]
 Dr. Howard's affidavit contains only conclusory assertions: "He [the successful applicant] had extensive industrial work experience, which I felt was extremely important for the position.... She [plaintiff] did have some business background and experience, but that did not and does not equate to industrial work experience." The defendants do not explain why, considering the emphasis placed on business as well as heavy industry in the articulated job responsibilities, work experience in heavy industry is more important than experience in other businesses