USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1846 FRANCO ACEVEDO-DIAZ, ET AL., Plaintiffs, Appellees, v. JOSE E. APONTE, ET AL., Defendants, Appellees, ________ ADA N. PEREZ, ET AL., Plaintiffs, Appellants. _____________________ No. 92-1848 FRANCO ACEVEDO-DIAZ, ET AL., Plaintiffs, Appellees, v. JOSE E. APONTE, ET AL., Defendants, Appellees, ________ DOROTEA COLLAZO RIVERA, ET AL., Plaintiffs, Appellants. _____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO, [Hon. Raymond L. Acosta, U.S. District Judge] ___________________ ____________________ Before Selya, Cyr and Stahl, Circuit Judges. ______________ ____________________ Raul Barrera Morales for appellants. ____________________ William Reyes Elias with whom Cesar R. Miranda Law Office ___________________ _____________________________ was on brief for appellees. ____________________ August 3, 1993 ____________________ 2 CYR, Circuit Judge. In November 1984, Jose E. Aponte, CYR, Circuit Judge. _____________ the candidate of the Popular Democratic Party ("PDP"), was elected mayor of the Municipality of Carolina ("City"), Puerto Rico, defeating the incumbent mayor, Roberto Iglesias, the candidate of the New Progressive Party ("NPP"). During his first year in office, Mayor Aponte either terminated, or refused to renew, several hundred non-policymaking city employees hired under the previous administration. In letters of dismissal to the employees, Aponte claimed that the City faced a severe fiscal crisis, and disclosed various criteria for determining which municipal employees were to be terminated in order to effect the necessary economies: (1) employees hired without compliance with Commonwealth or municipal personnel laws and regulations, see, e.g., P.R. Laws ___ ____ Ann. tit. 3, 1331-1337, which dictate the public posting of available posi- tions and competitive examinations; (2) employees hired or promoted during the 1984 "veda," or "electoral prohibition period," a four-month "window" before and after a municipal election during which hiring, renewals, or promotions by the incumbent administration are pro- scribed by law; (3) employees who submitted no documentary proof that they possessed the minimum education and experience required for their positions; (4) employees whose job positions were deemed nonessential, and therefore ex- pendable; or 3 (5) employees who had committed employment infractions (e.g., unexcused leaves of ____ absence, chronic tardiness). In March 1986, 357 terminated employees, claiming poli- tical affiliation with the ousted NPP, brought the present civil rights action under 42 U.S.C. 1983 against the City, Mayor Aponte, Jose A. del Valle (at times, the acting mayor), and Felix Martinez (the personnel officer). Plaintiffs alleged that their dismissals were due solely to their NPP affiliation, in violation of their First Amendment and due process rights under the United States Constitution. The complaint demanded compensatory and punitive damages, as well as reinstatement.1 The claims of 255 plaintiffs went to the jury following a four-month trial, and defendant verdicts were returned on the claims of 240 plaintiffs. Six plaintiffs were awarded compen- satory damages (from $1700 to $10,440) against the City, and punitive damages ($25,000) against Aponte, while nine plaintiffs ____________________ 1Three municipal employee classifications were involved in the challenged terminations: (1) "regular" employees, occupying permanent or career municipal positions, (2) "transitory" employees, appointed without the usual personnel screening procedures (e.g., postings and competitive examinations), but ____ subject to periodic renewals at the expiration of their fixed terms, and (3) "contractual" workers, hired for fixed terms under federally funded programs (e.g., HUD) administered by the City. ____ "Transitory" employees lack tenure, or a reasonable expectation in the indefinite continuation of their employment after the expiration of their fixed term. While their lack of a property interest in their employment positions generally precludes due process claims for a politically discriminatory dismissal, First Amendment discrimination claims are not precluded. See Santiago- ___ _________ Negron v. Castro-Davila, 865 F.2d 431, 436 (1st Cir. 1989); ______ _____________ Estrada-Izquierdo v. Aponte-Roque, 850 F.2d 10, 16 (1st Cir. _________________ ____________ 1988). 4 were awarded nominal damages ($1.00) against the City,2 and punitive damages ($25,000) against Aponte. The district court denied all claims for reinstatement. Finally, in May 1992, the court set aside all fifteen plaintiff verdicts. The present appeal is brought by eleven of the fifteen disappointed plain- tiffs. DISCUSSION DISCUSSION __________ A. Standard of Review and Applicable Law A. Standard of Review and Applicable Law _____________________________________ A jury verdict may not be set aside as a matter of law under Fed. R. Civ. P. 50(b) except on a "'determination that the evidence could lead a reasonable person to only one conclusion.'" ____ ___ __________ Hiraldo-Cancel v. Aponte, 925 F.2d 10, 12 n.2 (1st Cir.) (quoting ______________ ______ Conway v. Electro Switch Corp., 825 F.2d 593, 598 (1st Cir. ______ _____________________ 1987)) (emphasis added), cert. denied, 112 S. Ct. 637 (1991); see ____ ______ ___ Ferrer v. Zayas, 914 F.2d 309, 311 (1st Cir. 1990). On de novo ______ _____ __ ____ review, the court of appeals will uphold the verdict unless the facts and inferences, viewed in the light most favorable to the verdict, "point so strongly and overwhelmingly in favor of the movant that a reasonable jury could not have [returned the ver- dict]." Hendricks & Assocs., Inc. v. Daewoo Corp., 923 F.2d 209, _________________________ ____________ 214 (1st Cir. 1991); Ferrer, 914 F.2d at 311; Mayo v. Schooner ______ ____ ________ Capital Corp., 825 F.2d 566, 568 (1st Cir. 1987). _____________ ____________________ 2On appeal, certain plaintiffs demand a new trial on compen- satory damages, arguing that the jury had no choice but to credit their testimony on damages, especially as it related to their mental suffering and anguish. We summarily reject their argu- ment, as wholly unsupported by the record. 5 In a political discrimination case, see Branti v. ___ ______ Finkel, 445 U.S. 507 (1980); Elrod v. Burns, 427 U.S. 347 (1976), ______ _____ _____ plaintiffs must bear the threshold burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that plaintiffs' constitutionally protected conduct in this case, political affiliation with the NPP was a "sub- stantial" or "motivating" factor behind their dismissal.3 See ___ Ferrer, 914 F.2d at 311; Estrada-Izquierdo v. Aponte-Roque, 850 ______ _________________ ____________ F.2d 10, 13 (1st Cir. 1988); Rosaly v. Ignacio, 593 F.2d 145, ______ _______ 148-49 (1st Cir. 1979). Once plaintiffs clear the threshold, the burden shifts to defendants to articulate a nondiscriminatory __________ ground for the dismissals, and prove by a preponderance of the ___ _____ __ _ _____________ __ ___ evidence that plaintiffs would have been dismissed regardless of ________ their political affiliation. See Givhan v. Western Line Consol. ___ ______ ____________________ Sch. Dist., 439 U.S. 410, 416 (1979); Rodriguez-Pinto v. Tirado- __________ _______________ _______ Delgado, 982 F.2d 34, 39 (1st Cir. 1993); Kercado-Melendez v. _______ ________________ Aponte-Roque, 829 F.2d 255, 264 (1st Cir. 1987), cert. denied, ____________ ____ ______ 486 U.S. 1044 (1988). Either this "but for" causation test, or the defendant-employer's "Mt. Healthy defense," ensures that a ___________ plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action. See Mt. Healthy City Sch. Dist. ___ ____________________________ ____________________ 3The defendants do not contend that any appellant held either a confidential or a policymaking position for which partisan political affiliation might have been a legitimate requirement. See Branti, 445 U.S. at 508; Anthony v. Sundlun, 952 ___ ______ _______ _______ F.2d 603, 605 (1st Cir. 1991). 6 Bd. of Educ. v. Doyle, 429 U.S. 274, 284 (1977); Acosta-Sepulveda ____________ _____ ________________ v. Hernandez-Purcell, 889 F.2d 9, 13 (1st Cir. 1989); Rosaly, 593 _________________ ______ F.2d at 148. After a careful summarization of the trial evidence, the district court granted defendants' Rule 50(b) motion for judgment as a matter of law because the bulk of the circumstan- tial evidence relied on by plaintiffs namely, their party affiliation and the temporal proximity between their dismissals and Mayor Aponte's inauguration was too conjectural and conclusory to counteract the "overwhelming" Mt. Healthy defense, ___________ which demonstrated that massive layoffs were compelled as a result of the severe fiscal crisis brought on by the overhiring of City personnel under the previous administration. See Kauff- ___ ______ man v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172 (1st Cir. 1988) ___ ____________________ (finding that plaintiffs failed to allege the type of specific ________ evidence of politically discriminatory animus required to avoid summary judgment). The district court opinion compares the Mt. Healthy ____________ burden-shifting mechanism to similar devices used in other employment discrimination cases, such as Title VII cases, see, ___ e.g., Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 782 (1st Cir. ____ __________ ________________ 1990), and ADEA cases, see, e.g., Goldman v. First Nat'l Bank, ___ ____ _______ ________________ 985 F.2d 1113, 1116-18 (1st Cir. 1993). The opinion states that, once the defendant interposes the Mt. Healthy defense, "the ____________ plaintiff then has the opportunity to demonstrate that the alleged nondiscriminatory reason is a false pretext," which may 7 be accomplished either by "'persuading the [jury] that a discrim- inatory reason more likely motivated the employer or indirectly by showing that [the] employer's proffered explanation is unworthy of credence.'" Dist. Ct. Op., at 4 (quoting Texas Dep't ___________ of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981) (Title _____________________ _______ VII case)). Although literally correct, the quoted statement gives us pause, especially in light of the citation to Burdine. _______ Since a proper allocation of the burden of persuasion is critical to our assessment of the district court's decision under Rule 50(b), we first revisit the applicable burden-shifting procedure. Under Title VII, a plaintiff must establish a prima _____ facie case of employment discrimination, at which point a pre- _____ sumption of discrimination attaches to the plaintiff's claim. A limited burden of production then passes to the employer to ar- ___ ticulate a legitimate, nondiscriminatory reason for its actions, ________ a burden which is fully satisfied if the employer submits enough evidence to raise a genuine issue of material fact. The employer need not submit sufficient evidence to "persuade the [fact finder]." Burdine, 450 U.S. at 254. In other words, notwith- _______ standing the interim shift in the burden of production to the employer, the plaintiff-employee in a Title VII case "retains the burden of persuasion" at all times. Id. __ ___ _____ ___ By contrast, under the Mt. Healthy burden-shifting ____________ mechanism applicable to a First Amendment political discrimina- tion claim, the burden of persuasion itself passes to the defen- ______ __ __________ ______ ______ __ ___ ______ dant-employer once the plaintiff produces sufficient evidence _____________ 8 from which the fact finder reasonably can infer that the plain- tiff's protected conduct was a "substantial" or "motivating" _ factor behind her dismissal. Accordingly, once the burden of persuasion shifts to the defendant-employer, the plaintiff- employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons. Therefore, we can sustain a Rule 50(b) reversal in a political discrimination case only if: (1) the record evidence compelled the conclusion that the plaintiff would have been dis- _________ missed in any event for nondiscriminatory reasons, or (2) the plaintiff did not introduce sufficient evidence in the first instance to shift the burden of persuasion to the defendants. We address these alternatives in turn. B. The "Austerity" Defense B. The "Austerity" Defense _______________________ Through numerous expert witnesses and statistical data,4 defendants attempted to establish that all the chal- ____________________ 4For example, defendants presented the following uncon- troverted evidence: 1) in 1985, there were approximately 2,900 City employees, including 906 "transitory" employees, 459 of whom had been appointed by the former administration in fiscal year 1984 alone; 2) the former mayor had made 250-300 appointments between July and October 1984; 3) in 1984, despite warnings about the City's worsening budgetary problems, the former mayor renewed all transitory employees' expiring appointments; 4) by 1985, the ___ personnel payroll comprised 80% of the City's budget; 5) in 1985, defendant Aponte inherited a debt of $116 million, which has since been reduced to $30 million, and an accumulated deficit of $30 million, since reduced to $3 million; and 6) by 1991, there were 1,966 City employees, only eight of whom were "transitory" employees. 9 lenged dismissals were due to the fiscal crisis inherited by Mayor Aponte when he took office in 1985, which the defendants attributed to mismanagement or illegal patronage hiring practices on the part of the previous administration. The jury reasonably could have found that the dismissals made by the incoming admin- istration resulted in a 32% net reduction of approximately 900 City employees (from 2,869 to 1,966), and that no new employees were hired to perform the duties of the dismissed plaintiffs. Thus, the jury reasonably could have concluded that a bona fide fiscal crisis would have compelled the vast majority of the challenged dismissals even if the targeted employees had not been affiliated with the NPP. Defendants' well-deployed "austerity" defense apparently thwarted the claims of 240 of the 255 plaintiffs whose cases went to the jury. But blunt instru- ments make crude scalpels, and the Mt. Healthy defense requires ___________ individualized scrutiny by the jury with a view to whether a particular plaintiff's position would have been eliminated under Aponte's austerity program but for the plaintiff's NPP affilia- ___ ___ tion. In other words, even though defendants' overarching austerity defense may have established that massive dismissals were imperative, it did not compel jury verdicts adverse to all ___ plaintiffs. General statistical data regarding net work-force ___ reductions may mask individual dismissals which were purely dis- criminatory. Here, some plaintiffs testified that their posi- tions remained intact after their termination and specifically identified their replacements; the jury was free to credit this 10 testimony, despite testimony to the contrary. See Veranda Beach ___ ______________ Club Ltd. Partnership v. Western Sur. Co., 936 F.2d 1364, 1385 ______________________ _________________ (1st Cir. 1991) ("Once the threshold of sufficiency has been crossed, the credibility of a claimant and its witnesses presents a question for the jury, not for the trial court and most of all, not for the court of appeals."). Credibility determinations and evidence weighing are not grist for the Rule 50(b) mill. Hendricks, 923 F.2d at 214. _________ As defendants were required to carry the burden of persuasion, ______ __ __________ and the evidence supporting the Mt. Healthy "austerity" defense ____________ did not compel jury acceptance of the claims of all 255 plain- tiffs, we turn to the evidence bearing on the individual claims of the eleven appellants. C. The Individualized Defenses C. The Individualized Defenses ___________________________ The defendants attempted to establish their indivi- dualized Mt. Healthy defenses at trial based largely on the con- ___________ temporaneous justifications relied on in Mayor Aponte's letters of dismissal. See supra p. 3. Under the Mt. Healthy burden- ___ _____ ___________ shifting mechanism, the employer's contemporaneous justifications for an adverse employment action serve at least two important functions. First, to the extent the reasons given by the employ- er at the time of the dismissal are later proven false or frivo- lous, the weight of the evidence of discriminatory animus may be enhanced, thereby contributing significantly to the threshold Mt. ___ Healthy showing the plaintiff-employee must make in order to _______ shift the ultimate burden of persuasion to the defendant-employ- 11 er. Second, once the burden of persuasion has shifted to the employer, the jury would be entitled to find for the plaintiff- employee were it to conclude that the employer did not offer sufficient evidence to demonstrate that (i) the proffered reason for the dismissal was genuine or (ii) a bona fide basis existed __ which would have prompted the dismissal without regard to the employee's political affiliation. We reserve these individual- ized defenses for consideration with plaintiffs' evidence. Leaving aside certain proffered justifications for employee dismissals in the First Amendment political discrimina- tion context,5 only two individualized defenses remain for our ____________________ 5Some of the proffered justifications for defendants' employment actions must be pared to accord with applicable law. Although evidence that an employee was hired in violation of Commonwealth law precludes a finding that the employee possessed a property interest in continued employment, and hence a cogniza- ble due process claim, Kauffman, 841 F.2d at 1173, evidence that ___ _______ ________ an employee's appointment was a "nullity" under Puerto Rico law ab initio does not control a claim alleging a violation of the __ ______ employee's First Amendment right of political affiliation, see ___ Hiraldo-Cancel, 925 F.2d at 13 ("'We do not think that a new ______________ administration can use the "nullity" of appointments doctrine as a cover for discharges, transfers, and discrimination based solely on political affiliation'") (quoting Santiago-Negron v. _______________ Castro-Davila, 865 F.2d 431, 436-37 (1st Cir. 1989)). Although _____________ defendants argue that the rationale of Santiago-Negron applies _______________ only if the new administration continues to hire new personnel in _________ violation of the Personnel Act, Santiago-Negron rested on the _______________ ground that state law does not and cannot define First Amendment ______ rights. Santiago-Negron, 865 F.2d at 436. We do not suggest, _______________ however, that evidence relating to the plaintiff-employee's ________ qualifications under the applicable personnel regulations is immaterial. For example, an employee's lack of qualifications for the position, at the time of the dismissal, may well be __ ___ ____ __ ___ _________ considered a nondiscriminatory basis for the dismissal. The jury must determine whether such a lack of qualifications was a real or pretextual justification for the dismissal. On analogous reasoning, we discount two variations on the same defensive theme. First, the fact that some plaintiffs were appointed or promoted during the "veda," the electoral prohibi- 12 consideration in the present case, based on the evidence relating to each appellant's claim: (1) whether the plaintiff was quali- fied for the position at the time of the dismissal, and (2), if so, whether the position was eliminated for nondiscriminatory reasons. D. Plaintiffs' Evidence D. Plaintiffs' Evidence ____________________ Plaintiffs offered little direct evidence of discrimin- atory animus. But see infra notes 6 & 8. Nevertheless, as we ___ ___ _____ have held, "circumstantial evidence alone can support a finding of political discrimination." Anthony, 952 F.2d at 605; Estrada- _______ ________ Izquierdo, 850 F.2d at 14. Certain general observations can be _________ made concerning the circumstantial evidence bearing on the claims of all eleven plaintiffs. Mere temporal proximity between a change of administration and a public employee's dismissal is insufficient to establish discriminatory animus. Cf. Aviles- ___ _______ ____________________ tion period, is not necessarily controlling in the First Amend- ment context. "Puerto Rico law is not controlling in the area of ___ ___________ first amendment law," Santiago-Negron, 865 F.2d at 436 (emphasis _______________ added), and, in this respect, we see no principled distinction between the Commonwealth's personnel and electoral laws. Second, it is not necessarily a sufficient defense that a plaintiff did not meet the legally mandated minimum qualifications for the position at the time of appointment. See Hiraldo-Cancel, 925 __ ___ ____ __ ___________ ___ ______________ F.2d at 13; Santiago-Negron, 865 F.2d at 436. Although, as a _______________ general rule, an employee's continuing inability to meet the __________ established minimum qualifications for the position can be a sufficient nondiscriminatory ground for dismissal, cf. Hiraldo- ___ ________ Cancel, 925 F.2d at 14 (reinstatement is a meaningless remedy ______ _____________ where the employer, "under the aegis of valid personnel stan- dards, is empowered to terminate reinstated employees as soon as they dust off their desks"), Santiago-Negron's proscription _______________ against post hoc "nullification" would suggest that, to be ____ ___ controlling, the employee's qualifications should be measured as __ of the challenged dismissal. __ ___ __________ _________ 13 Martinez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992) (citing ________ _______ Kauffman, 841 F.2d at 1172). On the other hand, we have noted ________ that the "highly charged political atmosphere" occasioned by the major political shift from the NPP to the PDP throughout the Commonwealth of Puerto Rico in 1984, coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus. See Kercado-Melendez, _________ ___ ________________ 829 F.2d at 264; see also Anthony, 952 F.2d at 606 ("timing" of ___ ____ _______ dismissal may be suggestive of discriminatory animus); Estrada- ________ Izquierdo, 850 F.2d at 15 (same). Moreover, the record discloses _________ that these eleven appellants, for the most part, were not quiescent NPP members but played very active or prominent roles in its political activities, publicly and vocally supporting the reelection campaign of the former mayor. See Nereida-Gonzalez v. ___ ________________ Tirado-Delgado, 990 F.2d 701, 706 (1st Cir. 1993) (noting evi- ______________ dence that plaintiff was "known" party member); Ferrer, 914 F.2d ______ at 312 (noting that plaintiffs' political affiliation was not only "well known" but, in some instances, notorious); Kercado- ________ Melendez, 829 F.2d at 264 (noting plaintiff's "long, active, and ________ visible membership" in the opposition party). Appellants variously testified at trial that they were (1) members of the former mayor's elite "advance team," a corps of uniformed functionaries responsible for arranging campaign appearances; (2) organizers or participants in pro-NPP political rallies; (3) NPP women and youth coordinators; or (4) polling unit officers or members of electoral colleges. Thus, the jury 14 reasonably could have concluded that those appellants who were publicly identified as close political allies of the former NPP mayor were more conspicuous targets for political discrimination. Standing alone, even the circumstantial evidence that some plain- tiffs were especially conspicuous targets for discriminatory employment action by defendants would give us serious pause. With but two exceptions, however, a careful review of the evi- dence reveals that appellants plainly presented other evidence sufficient to shift the burden of persuasion, effectively fore- closing any realistic claim for Rule 50(b) relief by defendants. We briefly recount the dispositive evidentiary considerations bearing on each appellant's claim. 1. Brenda Aponte Osorio 1. Brenda Aponte Osorio ____________________ Ms. Aponte was dismissed from her "regular" position, as an Executive Officer IV, in May 1985. In addition to other direct evidence of discriminatory animus,6 the letter of dismiss- al from Mayor Aponte stated that Ms. Aponte apparently did not possess the qualifications for her position in particular, a college degree and "considerable" relevant work experience. In fact, the written job description for an Executive Officer IV lists a college degree as "desirable preparation," but provides that a "combination of preparation and experience will be accept- able"; it defines "experience" as "positions of progressive ____________________ 6Ms. Aponte states that she was constructively dismissed one day after the new administration took office, when she was denied access to her office, told that she was "not a person of trust," and given no further duties. Her protests went unanswered. 15 responsibility . . . in the public service, including consider- able administrative or supervision experience." (Emphasis ___________ __________ added.) At trial, Ms. Aponte testified that she attended college for three years, and began working for the City in 1978 as a supervisor in the Human Resources Department.7 __________ Ms. Aponte presented sufficient evidence to enable a jury to find that she possessed the required qualifications, both ____ at the time of her appointment and dismissal. The jury could have concluded, therefore, that defendants' contemporaneous justification was a mere pretext for political discrimination. Cf. Aponte-Santiago v. Lopez-Rivera, 957 F.2d 40, 43 (1st Cir. ___ _______________ ____________ 1992) (reversing summary judgment for defendant; noting that proof that defendant's asserted nondiscriminatory reason for dismissal was pretextual is a "link in a chain of circumstantial evidence" of political discrimination which, when coupled with allegedly "conclusory" evidence as to the timing of demotion and the parties' political affiliation, creates a triable issue which the fact finder might resolve in plaintiff's favor); Anthony, 952 _______ F.2d at 606 (plaintiff's obvious qualifications can be circum- stantial evidence of discriminatory animus); cf. also Burns v. ___ ____ _____ Gadsden State Community College, 908 F.2d 1512, 1519 (11th Cir. ________________________________ 1990) (employer's exceedingly narrow interpretation of minimum "experience" required for position, coupled with other evidence ____________________ 7Even though their individualized defenses, in many instanc- es, succumbed to this same "equivalency" virus, permitting the jury to make reasonable substitutions of work experience for educational background, defendants have not challenged these substitutions on appeal. 16 of discriminatory animus, creates genuine dispute as to whether employer "invented" excuse as pretext to mask improper motive for dismissal in ADEA action). The circumstantial evidence of pretext, coupled with the direct evidence of discriminatory animus, was sufficient to shift the burden of persuasion to defendants. As there was no conclusive evidence that Ms. Aponte would have been dismissed in any event for a nondiscriminatory reason, the jury verdict must be sustained. 2. Dorotea Collazo Rivera 2. Dorotea Collazo Rivera ______________________ Ms. Collazo was dismissed from her "regular" position, as an Administrative Assistant I, in January 1986.8 The dismiss- al letter asserted that Collazo's termination was based on an absence of evidence that she was ever qualified for her position. However, Collazo's job description merely required a "desirable" (high school diploma) education/experience ("general office work") mix. Collazo testified that she met the posted academic preparation component of the job description. Moreover, there was no dispute that Collazo, who was appointed to her final __ ___ _____ position with the City in 1981, previously had been employed as ________ an office clerk for the City since 1976. Thus, Collazo likewise _____ ____ succeeded in shifting the burden of persuasion to the defendants, and defendants simply failed to persuade the jury. ____________________ 8When the new administration took over, Collazo's secretary was transferred to another department and Collazo was locked out of her office without warning. Collazo's husband, who was a NPP unit chairman, and her daughter, were also dismissed from their positions with the City in 1985-86. 17 3. Maria Colon de Jesus 3. Maria Colon de Jesus ____________________ Ms. Colon was dismissed from her "regular" position, as a Messenger, in July 1985. The letter of dismissal stated that the City's messenger service, with forty-two employees, was "excessive and unnecessary," that it must be reduced to ten employees as an economy measure, and that the ten employees to be retained had been chosen based on an evaluation of their job performance and seniority. Ms. Colon conceded that the reduction in force did occur as defendants indicated, and that she lacked the requisite seniority to qualify for one of the ten remaining positions. She points to no particular discriminatory conduct, nor does she contend that (1) messengers with less seniority or lower perfor- mance ratings were retained,9 (2) the City needed more than ten messengers in 1985, or (3) defendants replaced any of the thirty- two dismissed messengers. As Colon's political affiliation and the timing of her dismissal were the only significant probative evidence supporting her claim,10 and there was no direct or ____________________ 9While conceding that she was among the dismissed messengers with the least seniority, Colon nonetheless argues that the _____ selection criteria were suspect because Commonwealth law requires that reductions in force be justified first on the basis of employee performance ratings, and only then on seniority consid- erations. See Delbrey v. Municipio de Carolina, 111 P.R.R. 492 ___ _______ _____________________ (1984). The record indicates, however, that defendants made their selections only after "considering the criteria of effi- _____ ciency in the performance of messenger duties and the time of ______ services rendered in that capacity." (Emphasis added.) 10In view of Colon's concession that she lacked the requi- site seniority, the other circumstantial evidence was altogether too weak to vault the initial Mt. Healthy hurdle. Colon's ____________ political participation was much less frequent and activist than 18 circumstantial evidence of pretext, the burden of persuasion never shifted to defendants. As no factual dispute was generated concerning the legitimacy of the austerity measures, or Colon's failure to meet the criteria for retention, the verdict could only have been based on conjecture that Colon would not have been terminated but for her political affiliation. See Ferrer, 914 ___ ______ F.2d at 311 ("plaintiff is not entitled to inferences based on speculation and conjecture").11 4. Hector L. Encarnacion Matos 4. Hector L. Encarnacion Matos ___________________________ Encarnacion was dismissed from his "regular" position, as a Computer Operator I, in August 1985. The dismissal letter stated that he lacked the minimum qualifications for the posi- tion, which defendants characterized at trial and on appeal as requiring an "associate degree" in accounting or computer opera- ____________________ most other appellants. According to her undisputed testimony, she merely participated "at the polling places, and on the marches in [her] spare time," and served as "secretary for the electoral board" in 1984. 11There are important public policy considerations at stake in these circumstances. First, legitimate efforts by newly- elected officials to impose fiscal constraints and to foster operating efficiencies should not be hamstrung. See Marin-Piazza ___ ____________ v. Aponte-Roque, 873 F.2d 432, 434 (1st Cir. 1989) ("[W]e are ____________ inclined to give a certain amount of leeway to personnel deci- sions of new administration officials which implement a facially politically neutral reorganization of structure or procedure."). Newly-elected officials, however well meaning, might be deterred from needed measures to effect economies and efficiencies in governmental operations if a discharged employee's political affiliation alone were enough to carry her claim to the jury. Second, though there was ample opportunity to raise a genuine factual dispute regarding the legitimacy of the defendants' "austerity" program, the defendants demonstrated, without rebut- _______ ______ tal, that the City has operated for at least six years with a ___ vastly streamlined messenger staff. 19 tion. The job description called for a "high school diploma, supplemented by courses in mechanized accounting or programming and one year of experience in that field," or "[a] combination of __ academic background and experience." Thus, contrary to defen- dants' mischaracterization at trial, the job description did not require post-secondary school courses sufficient to qualify Encarnacion for an associate degree. Moreover, although Encar- nacion conceded at trial that his post-secondary school courses were not in accounting or programming, and that he had no exper- ience in computer programming prior to his appointment, he had _____ __ ___ ___________ acquired two years' working experience on the job before he was dismissed in 1985, during which time he had received several "excellent" job performance evaluations. See id. at 312-13 ___ ___ (noting that jury could credit circumstantial evidence that plaintiff "performed her duties very well"); Estrada-Izquierdo, _________________ 850 F.2d at 14 (finding "probative" the circumstantial evidence that plaintiff "successfully carried out her job" for many years). Encarnacion's job description was flexible enough to permit the jury to determine that he possessed the necessary qualifications, and that the stated reason for his dismissal was pretextual. 5. Maria de Lourdes Escute-Levest 5. Maria de Lourdes Escute-Levest ______________________________ Ms. Escute-Levest was dismissed from her "regular" position, as a Computer Operator I, in October 1985. Initially, defendants contended that she was unqualified, but later retreated to their "nullity of appointment" justification when 20 she protested that she had an associate degree in computer programming. See supra note 5. Escute, a member of the former ___ _____ mayor's "advance team," testified at trial without objection as to the basis of her knowledge12 that her position was refilled following her dismissal, suggesting that it was not as expendable as defendants contend on appeal. The cumulative circumstantial evidence of discriminatory animus and pretext was sufficient to shift the burden of persuasion to defendants and to support the jury verdict. 6. Jesus Garcia Delgado 6. Jesus Garcia Delgado ____________________ Garcia was dismissed from his "regular" position, as a Computer Operator I, in November 1985. Defendants contended that Garcia, who possessed an associate degree in computer program- ming, did not have the required year of experience in a "related field" at the time he was appointed in 1978. Even so, he had accumulated seven years' experience by the time he was dismissed, and plainly met all qualifications for the position long before his dismissal. As the jury could have inferred that the justifi- cation offered for the dismissal was pretextual, there was enough evidence to shift the burden of persuasion to defendants. ____________________ 12At oral argument, defendants contended that plaintiffs' trial testimony regarding their replacements was too conclusory and lacked factual foundation. However, at trial the defense did not object to plaintiffs' testimony based on lack of foundation. Thus, the jury was entitled to resolve these issues on the basis of its credibility determinations and weighing of the evidence. As the evidence was not challenged at trial, and there has been no showing of "plain error," Doty v. Sewall, 908 F.2d 1053, 1057 ____ ______ (1st Cir. 1990), we reject their claim on appeal. 21 7. Victor M. Guadalupe Bobonis 7. Victor M. Guadalupe Bobonis ___________________________ Guadalupe was dismissed for the second time from his "transitory" position, as a municipal guard, in October 1985. In January 1985, the occasion of the first dismissal, the only justifications defendants offered were that his transitory appointment had already lapsed and the position was deemed expendable under the "austerity" program. Mayor Aponte abruptly rescinded the first dismissal letter on January 25, 1985. In June 1985, however, Aponte sent another letter of dismissal, asserting that Guadalupe did not meet the minimum qualifications for the position, and that his original appointment therefore had been illegal. As there was no evidence that Guadalupe did not meet the minimum job qualifications, the jury reasonably could have concluded that defendants' shifting justifications for Guadalupe's dismissal amounted to pretextual posturing. Furthermore, Guadalupe testified that twelve or fifteen more policemen were hired after his dismissal. See Nereida- ___ ________ Gonzalez, 990 F.2d at 706 (noting that evidence suggesting that ________ defendants' reorganization was a "sham" may be considered proba- tive of discriminatory animus); Ferrer, 914 F.2d at 311 ("over- ______ staffing" defense undermined by competent evidence from which jury could conclude that defendants later hired replacements to perform same functions entailed by plaintiff's position); see ___ also supra note 12. ____ _____ 8. Ada N. Perez Colon 8. Ada N. Perez Colon __________________ 22 Ms. Perez was dismissed from her "regular" position, as an Executive Officer I, in September 1985. Defendants contended that she was not qualified, and alleged that she had taken an un- authorized medical leave, without pay, to undergo surgery. The Executive Officer I position requires a four-year college degree and administrative or supervisory experience, or an "equivalent combination of academic background and experience." Perez, who was a member of the former mayor's "advance team," had attended college for two years, and had worked for the City since 1980 as _____ ____ an officer for the CETA program and a coordinator at the Human Resources Department. Thus, the jury reasonably could have determined that her five-year City work experience was sufficient to offset the two-year deficit in education. See supra note 7. ___ _____ The jury therefore was free to conclude that both justifications for her dismissal were pretextual. 9. Evelyn Quinones Osorio 9. Evelyn Quinones Osorio ______________________ Ms. Quinones was dismissed from her "regular" position, as an Executive Secretary III, in September 1985. Within two weeks after taking office, Mayor Aponte called all mayor's office employees together and advised that they were "persons who were in trust to the former mayor," and that they would be replaced or transferred in "due time." Defendant Martinez also told Qui- nones, a member of the former mayor's "advance team," that she "didn't have his trust." After training her replacement, Qui- nones accepted a transfer out of the mayor's office. She testi- fied that officials of the new administration erased her time 23 cards and, on one occasion, retained her paycheck for six weeks. Defendant Martinez, City personnel officer, told Quinones: "[T]hose are injustices but I follow orders from above." (Empha- ___ _ ______ ______ ____ _____ sis added.) In July 1985, after Quinones' brief tenure in the new secretarial position, Aponte notified her that she would be ter- minated because she was unqualified for the position. The rele- vant job description called for a two-year secretarial course, and four years' secretarial experience, but two years of work experience could be substituted for educational experience. When Quinones provided satisfactory documentation of her educational qualifications, defendants fell back on their "nullity of ap- pointment" defense as the sole ground for her September 1985 dismissal. See supra note 5. Moreover, Osario testified that ___ _____ she had worked as a secretary since 1980, and her final year as an Executive Secretary III clearly qualified her for her new position. Thus, Quinones presented sufficient direct and circum- stantial evidence of discriminatory animus and pretext to shift the burden of persuasion. 10. Carmen Rivera Guadalupe 10. Carmen Rivera Guadalupe _______________________ Ms. Rivera Guadalupe was dismissed from her "transito- ry" positions, as Child Care worker and Secretary, in January 1986. She was notified that she was being terminated because her transitory appointment had lapsed, and the City could no longer afford to fund the position. Her husband continued to work for the Aponte administration for another five or six years. Like 24 plaintiff Colon, Ms. Rivera offered no evidence that the elimina- tion of her position was in any way pretextual, nor that she was ever replaced, let alone by a PDP member. As political affilia- tion and the timing of the dismissal were insufficient to satisfy her threshold burden of production,13 the jury verdict must be set aside as conjectural. 11. Luisa Rivera Serrano 11. Luisa Rivera Serrano ____________________ Ms. Rivera Serrano was dismissed from her "transitory" position, as a Clerk I, in August 1985, ostensibly because her fixed term of employment had expired. Although the jury reason- ably could have inferred that her position, like that of Ms. Rivera Guadalupe, would be eliminated on austerity grounds, the implicit rationale for her dismissal was undermined by Ms. Rivera Serrano's testimony that she was replaced by Rosa Mattos, a PDP member. Defendants' attempt to undermine Rivera's testimony, by noting that she previously had identified a different person (Inez) as her replacement, fails. Not only are we precluded from credibility determinations, see Hendricks & Assocs., 923 F.2d at ___ ____________________ 214, but Rivera offered a plausible explanation for her inconsis- tent responses: both individuals applied for her former posi- tion. As there was ample basis for a reasonable inference that the proffered ground for the dismissal was pretextual, the jury verdict must be upheld. ____________________ 13Like Ms. Colon, see supra text accompanying notes 9-11, ___ _____ Ms. Rivera's NPP activities were peripheral and relatively incon- spicuous. She served as a polling unit officer for the NPP, and chaired the NPP Womens' Movement at her local union. 25 CONCLUSION CONCLUSION __________ We acknowledge the careful attention the district court has given the evidence in this case.14 In the Rule 50(b) con- text, however, we are required to recognize that evidence does not pass through the jury "lens" unrefracted. Our review con- vinces us that these jury verdicts, with two exceptions, must ____________________ 14In February 1992, the district court denied defendants' first Rule 50(b) motion. After carefully reviewing its "notes, defense arguments and the jury verdicts," the court based its ruling on the fact that "the jury individually and meticulously considered each [of the 255] claim[s]." The closeness of these questions is demonstrated by the district court's equally pain- staking reconsideration, as well as our own review. We nevertheless reject plaintiffs' appeals from the district court ruling denying their reinstatement. A denial of reinstate- ment is reviewed for "abuse of discretion," Hiraldo-Cancel, 925 ______________ F.2d at 13, and we will reverse "only if we are left with a firm conviction that [the district court] has committed 'a meaningful error in judgment.'" Rosario-Torres, 889 F.2d 314, 323 (1st Cir. ______________ 1989) (en banc) (quoting Anderson v. Cryovac, Inc., 862 F.2d 910, ________ _____________ 923 (1st Cir. 1988)). It did not. After assiduously weighing the equities, the district court rejected the reinstatement claims on several sustainable grounds. First, federally com- pelled reinstatements to municipal positions implicate serious comity and federalism concerns, especially in light of the compelling evidence that plaintiffs' appointments were made in blatant disregard of Commonwealth and municipal personnel and electoral laws, and that the City was operating under severe fiscal constraints, both at the time of the dismissals. Id. ___ (noting that, "[i]n shaping equitable remedies, comity concerns can loom large," and that "court-ordered reinstatement of ille- gally-hired . . . workers strikes a particularly jarring note"). Second, significant periods of time elapsed after their dismiss- als before plaintiffs requested injunctive relief. Id. at 324. __ Finally, some of the harshness inherent in a refusal to reinstate is diminished where the employee has been awarded significant monetary relief. See Rosario-Torres, 889 F.2d at 322, 324 ___ ______________ (contrasting Title VII cases, which do not permit recovery of compensatory or punitive damages, with First Amendment political discrimination cases, which offer a fuller "palette of available make-whole remedies" to offset a denial of reinstatement). 26 therefore be reinstated.15 Judgment in accordance with the verdicts must be rein- _______________________________________________________ stated for all appellants, with the exception of Maria Colon de _________________________________________________________________ Jesus and Carmen Rivera Guadalupe. In all other respects, the __________________________________ ___________________________ district court judgment is affirmed. The case is remanded to the ___________________________________ ___________________________ district court for further proceedings not inconsistent herewith. _________________________________________________________________ Costs are awarded to the nine prevailing appellants. ____________________________________________________ ____________________ 15Aponte also asserts that the verdicts should be vacated as inconsistent, since the special verdict did not label Aponte "liable" for political discrimination and yet found him liable for punitive damages. We reject this contention. A facially inconsistent verdict in a civil action no rare phenomenon is not an automatic ground for vacating the verdict. See Fair- ___ _____ mount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485 (1933). _________________ _________________ The court "must attempt to reconcile the jury's findings, by exegesis if necessary . . . before [it is] free to disregard [them]." Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 _______ ________________________ (1963). Here, the findings are readily reconcilable. The jury charge, to which there was no relevant objection, suggested that Aponte's liability and the municipality's liability could go hand in hand. Since the special verdict form did not specify the need for dual findings on liability, the jury may have reasoned that branding the City "liable" necessarily incorporated a finding of Aponte's liability as well. Accordingly, in view of the jury's clear imposition of liability for punitive damages on Aponte, we cannot conclude that the verdict naming only the City "liable" for discrimination unambiguously or completely exonerated Aponte. Compare DeFeliciano v. DeJesus, 873 F.2d 447, 452 (1st _______ ___________ _______ Cir.) (citing cases in which employee was completely exonerated, but employer, whose liability could only derive from employee's liability, was found liable), cert. denied, 493 U.S. 850 (1989). ____ ______ 27